ANN WHITMORE, Plaintiff in Error, *vs.* HENRY SCRIBE WHITMORE *et al.* Defendants in Error.

*Opinion filed February 16, 1910.*

1. DEEDS—*when decree dismissing bill to cancel deed will be upheld on appeal.* A decree dismissing a bill to set aside a deed by complainant and for partition, based upon the oral testimony of witnesses heard in open court, will be upheld, on appeal, unless the findings of the chancellor are palpably erroneous.

2. The court reviews the evidence in this case, and holds that it fails to establish a fiduciary relation between the grantor and grantee in the deed sought to be set aside or that there was fraud in the transaction.

WRIT OF ERROR to the Circuit Court of Jo Daviess county; the Hon. R. S. FARRAND, Judge, presiding.

JONES & KERZ, and MCELROY & WETZLER, for plaintiff in error.

HODSON & CAMPBELL, for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Ann Whitmore, the plaintiff in error, filed her bill of complaint in the circuit court of Jo Daviess county, to the November term, 1908, against Henry Scribe Whitmore, Jane Williams, Sophia Foster, and others, defendants in error, seeking to set aside a deed made by her on or about September 18, 1908, which conveyed to the said Henry Scribe Whitmore all her interest in 185.73 acres of land in Jo Daviess county, and for partition of said real estate. The bill averred that on or about August 12, 1902, Henry Whitmore, the father of George F. Whitmore, hereinafter mentioned, died seized in fee of said real estate; that he left a will and codicil thereto, which were duly admitted to probate by the county court of Jo Daviess county; that after providing for the payment of his debts and funeral

expenses he devised and bequeathed all the residue of his property to his four children, viz., Sophia Foster, Henry Scribe Whitmore, Jane Williams and George F. Whitmore, share and share alike, to have and to hold the same to them and to their heirs and assigns forever, and appointed his son Henry Scribe Whitmore executor of said will; that by the codicil to said will the testator provided that in case his son George F. Whitmore pre-deceased him, the share given by the will to said George F. Whitmore should be equally divided among his other three children, and that in no event should the wife or her child or children of the said George F. Whitmore take any part of the estate of the testator, whether the said George F. Whitmore survived the testator or not. The bill further averred that George F. Whitmore survived his father and died intestate and without issue on September 12, 1907, leaving him surviving the plaintiff in error, his widow, and Henry Scribe Whitmore, Sophia Foster and Jane Williams, his brother and sisters, as his only heirs-at-law; that he was at the time of his death seized in fee simple of an undivided one-fourth of said real estate, which, upon his death, vested in his heirs-at-law, as follows: One-half thereof in plaintiff in error and the remaining one-half in his said brother and sisters, subject to the dower of plaintiff in error. The bill then charged that on September 18, 1907, Henry Scribe Whitmore, by means of fraud and undue influence and false and untrue statements, induced the plaintiff in error to sign a paper which she has since learned was a deed conveying to said Henry Scribe Whitmore all her interest in said 185.73 acres of land. Defendants in error filed an answer denying that plaintiff in error is or ever was seized in fee of any portion of the said real estate or entitled to dower therein, and denying that plaintiff in error was induced to sign said deed by means of fraud and undue influence or false and untrue statements. A hearing before the chancellor upon the bill and answer resulted in a decree dis-

missing the bill for want of equity. Ann Whitmore has brought the record of the circuit court to this court by writ of error.

The plaintiff in error contends that the deed to Henry Scribe Whitmore should have been set aside because, as she claims, a fiduciary relation existed between her and Whitmore at the time she executed the deed, and by abusing the confidence reposed in him and by misrepresentation and deceit he obtained the deed for a grossly inadequate consideration.

It was conceded by the answer filed by the defendants in error in the circuit court that the land in question was worth at least $60 per acre. The consideration expressed in the deed from plaintiff in error to Whitmore was $400.

George F. Whitmore was married to plaintiff in error April 7, 1897, at Milwaukee, Wisconsin, and they lived continuously in that city up to the time of his death. On August 27, 1907, he was taken sick, and soon thereafter sent for his brother, Henry Scribe Whitmore, who resided at Galena, Illinois. Henry Scribe Whitmore went to Milwaukee, had his brother taken to a hospital, and remained in Milwaukee, staying with plaintiff in error at her home, until his brother's death, which occurred on September 12, 1907. Henry Scribe Whitmore arranged for the preparation and shipment of the body to Galena and for the funeral services, which were held at his home in Galena on Sunday, September 15. He paid the expenses of the sickness and burial of his brother, amounting to $331.90, as they were incurred. Plaintiff in error accompanied the remains of her husband to Galena and staid at the home of Henry Scribe Whitmore until the afternoon of the day following the funeral, when she left to visit with a friend living in the country. This was her fourth trip to Galena. The last time she had been there was in 1902. Upon her return to the home of Henry Scribe Whitmore from her visit he asked her what she was going to do about the bills

which he had paid on account of her husband's sickness and burial. She testified that she told him that she did not have anything, and that he told her not to worry,—that he would pay everything; that he then produced a paper of some kind and asked her whether she had ever read his father's will, to which she replied that she knew what was in the will. She then testified that she had read the will soon after Henry Whitmore's death but had never consulted anyone about it; that after Henry Scribe Whitmore produced the paper he said, "Of course, you have nothing coming under the will;" that he then said he wanted to buy out his two sisters and settle everything and he wanted to have her signature to the paper; that she asked him whether she was doing right,—whether the others would be satisfied,—and that he replied that the others had nothing to do with it; that he then telephoned Mr. Sheean, an attorney of Galena, who came and told her to sign the paper, and that after she had done so Henry Scribe Whitmore handed her $100; that Mr. Sheean asked her if she was satisfied, and she answered that she was; that neither Whitmore nor Sheean read the paper to her which she signed or told her what it was and that she did not read it herself; that she was not told why the money was paid to her but thought it was a present from her brother-in-law; that she had never expected anything from Henry Whitmore's estate; that she did not know she was signing a deed to the 185.73 acres of land, and did not know what the paper was until she was told by a lawyer, of Milwaukee, whom she had engaged to look after her interests and who had made an investigation, that she had signed a deed. She further testified that the deed was folded when she signed it and she thought she was signing a copy of the will; that the reason she signed the paper without ascertaining its nature was because Henry Scribe Whitmore said he had to have her signature to buy out his sisters,

and that she could not say in what way she was led or influenced to sign the paper.

Henry Scribe Whitmore, on behalf of defendants in error, testified that when plaintiff in error returned from her visit to the country he called her attention to the bills he had paid on account of her husband's sickness and burial; that he then asked her whether she had seen a copy of his father's will, and she replied that she had; that he asked her if she had read the will, and she answered in the affirmative; that he asked her if she had seen the provision in the will that she was not to have any of his father's estate, and she said she had; that he asked her if she had any money with which to pay her husband's debts, and she replied that she had not; that he told her he might want to buy out some of the other heirs, and if she would give him a quit-claim deed to her interest, if any, in the estate, he would pay all her husband's debts and give her $100 in money; that she said she would do it, and he then went down town and saw Mr. Sheean and instructed him to prepare a quit-claim deed; that plaintiff in error promised to go to Sheean's office to sign the deed, but on the following day decided that she would rather Mr. Sheean would come to the house; that he telephoned to Sheean and asked him to come to his home; that Sheean came and brought the deed with him; that he read the will, codicil and deed to plaintiff in error and asked her if she understood the transaction, and she replied that she did; that the deed was placed on a table and she signed it; that it was not folded when she signed it and she could have read it if she had so desired; that Sheean took her acknowledgment and departed with the deed, and the witness gave her $100 in money and has had no further conversation with her about the matter.

The defendants in error also called as a witness T. J. Sheean, the attorney referred to by Henry Scribe Whitmore in his testimony, who testified that Henry Scribe

Whitmore instructed him to prepare the deed in question and at the same time directed him to explain to plaintiff in error the provisions of his father's will and the reason why he was getting the deed from her; that he prepared the deed on September 18, 1907, with the understanding that plaintiff in error would come to his office to execute it; that on the following day he went to the home of Henry Scribe Whitmore, after being notified by Whitmore that plaintiff in error desired him to come to the house, taking the deed with him, and was introduced to plaintiff in error; that Whitmore produced a copy of his father's will, and that he (Sheean) asked plaintiff in error if she understood the provisions of the will; that she replied that she did—that she had read it; that he then read the codicil and thinks that he read the entire will to her; that he then said to her, "Now, some attorneys might say that you have an interest in this after your husband has died and others might say that you haven't, and you may have an interest in that land or you may have nothing there. Scribe is buying out the other heirs, and in selling it a careful person examining the title would want a quit-claim deed from you to make the title perfect;" that he then read the deed to her and laid it on the table; that she signed it and he took her acknowledgment, and then carried the deed to his office to put his notarial seal on the certificate.

It further appears that Henry Scribe Whitmore, in accordance with the provisions of the will of Henry Whitmore, had been acting as the agent for his co-tenants in the management of the real estate and the collection of the rents from the time of his father's death up to the time of the death of George F. Whitmore.

The action of the court in refusing to set aside the deed, in denying partition and in dismissing complainant's bill are the only matters assigned as error. The oral testimony heard by the chancellor related entirely to the question of whether the deed should be set aside. Counsel argue at

243—35

considerable length the question of what interest the plaintiff in error acquired in this real estate, under the statute, as the widow of George F. Whitmore, but in the view we take it will not be necessary to pass upon that point. It is clear from the testimony that no fiduciary relation existed between her and Henry Scribe Whitmore. As to whether any fraud or deception was practiced on her to procure the execution of the deed the evidence is somewhat conflicting. The matters concerning which there is such conflict, however, are of no great consequence, as it is doubtful whether the plaintiff in error would be entitled to the relief sought under her own testimony. The decree dismissing the bill was based upon the testimony of the various witnesses heard by the chancellor in open court, and under such circumstances the findings of the court will not be disturbed unless they are clearly and palpably erroneous. *Village of St. Anne* v. *Coyer,* 223 Ill. 96; *Watson* v. *Watson,* 225 id. 412; *Johnson* v. *McNellis,* 228 id. 351; *Day* v. *Wright,* 233 id. 218.

The decree of the circuit court is affirmed.

*Decree affirmed.*