ANTONINA MONETA, Appellee, *vs.* ALOYSUS E. HOFFMAN *et al.* Appellants.

*Opinion filed February 25, 1911.*

1. APPEALS AND ERRORS—*findings of chancellor, from evidence heard, not disturbed unless clearly erroneous.* The findings of the chancellor, from conflicting evidence heard in open court, will not be set aside by a court of review unless clearly erroneous.

2. PRINCIPAL AND AGENT—*agent cannot secretly deal with principal's property to his own advantage.* An agent and confidential adviser has no right to deal with the principal's property for his own advantage without his principal's consent, and equity will require him to account to the principal for losses sustained through the agent's fraudulent manipulation of the property, and, except as against innocent third persons, will set aside conveyances and encumbrances made to carry out the agent's fraudulent designs.

3. LACHES—*delay will not bar relief against fraud of which injured party was ignorant.* Mere delay will not bar relief, in equity, against fraud where the complainant was ignorant of the fraud at the time of the transaction and filed her bill within a reasonable time after obtaining knowledge.

4. The court reviews the evidence in this case, and holds that it clearly shows fraud by the complainant's agent in handling and disposing of her real estate; that appellees herein were mere volunteers, whom the agent used in furthering his fraudulent schemes, and not innocent purchasers; and that the decree fully protects the rights of all persons who are innocent purchasers or mortgagees.

APPEAL from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding.

ARCHIBALD CATTELL, for appellant Aloysus E. Hoffman.

LEE & LEE, for appellant Frances Ciesielski.

DAVID & ZILLMAN, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellee, Antonina Moneta, on August 6, 1909, filed her bill in the superior court of Cook county against appellants, Aloysus E. Hoffman and Frances Ciesielski, and others, asking for the reconveyance of certain property which it is alleged appellee was induced to convey to the person from whom said appellants derived title, by means of fraudulent transactions, and for other relief in connection with the real estate involved in said transactions. The court entered a decree in favor of appellee, whereupon this appeal was taken.

Appellee, at the time this bill was filed, was about fifty years old. She and most of the parties to the transactions here involved were of Polish nationality. She had been married three times. Her first husband, Joseph Otzenberger, whom she married when she was about seventeen,

ran a saloon and restaurant at Lemont, Illinois, for a number of years, until his death, in 1901. He had asthma during much of this time and his wife aided him in running the business. She also ran a millinery store at Lemont, doing the selling herself, some one else purchasing for her in Chicago. After her first husband's death her brother bought the saloon. In 1903 she married Peter Kiolbassa, of Chicago, and lived with him in that city until his death, in June, 1905. May 8, 1907, she married her present husband, Martin Moneta, and at the time of this litigation they were residing on Milwaukee avenue, Chicago. The three pieces of real estate directly involved in this controversy formerly belonged to Kiolbassa but were deeded to appellee about the time of their marriage,—some before and some after that date. He left a will, but died seized of no real estate and only a few hundred dollars' worth of personal property. During his last illness one John A. Rybczynski, one of the defendants in this case, who knew Kiolbassa well, called on him and became acquainted with appellee. He attended Kiolbassa's funeral and afterward came to the house and offered his services to the widow, stating that Kiolbassa had done him and his father many favors and he was glad of an opportunity to reciprocate. She told him about her husband's will and asked what was necessary to be done, also saying that she wanted the advice of Stanley Kunz on the matter. Kunz advised her to take the matter to a certain lawyer whom he named. Appellee claims that Rybczynski went along and saw this lawyer, who said he was too busy to take up the matter and gave her the name of another lawyer. Rybczynski said if she had to go to another lawyer why not go to one he could recommend?—and thereupon suggested the name of Joseph A. Casey, and she claims he introduced her to Casey, who took charge of probating the will. Appellee advised with him, as her lawyer, until his death, which occurred some time previous to the institution of this litigation. It appears that

Casey was also the legal adviser, in some matters, of Ryb-
czynski.    Appellee testified that Rybczynski saw her fre-
quently, and shortly thereafter reported that Casey had sent
word that before Kiolbassa's estate could be closed and her
widow's award allowed it was necessary for her to dispose
of certain property at 1040 North Wood street; that he
suggested that his sister, Louise Stranczewski, should take
the title to the premises and hold it until a purchaser
could be secured, at which time the purchase price should be
turned over to appellee; that appellee, after some persuasion
as to the necessity of such an act, gave a warranty deed of
said premises, dated July 21, 1905, to Louise Stranczewski.
The Wood street property at that time stood in appellee's
name, and was encumbered with a trust deed to Paul O.
Stensland securing a balance of $1000 on notes executed by
Peter Kiolbassa and his former wife, also a balance of $500
on a bond to the Jagiello Building and Loan Association,
secured by a trust deed executed by Kiolbassa before his
marriage to appellee.    This deed of appellee was acknowl-
edged before Rybczynski, the named consideration being
$2050.    September 14, 1905, Louise Stranczewski and her
husband transferred this property by warranty deed to Ste-
fan and Maryanna Rewniak for a consideration of $2500,
and received in cash the payment of $1500.    At or about
this time appellee claims Rybczynski paid her $74, telling
her he had paid the liens on the Wood street property and
after discharging them there remained only this amount.
The liens, however, were not discharged or paid.    The deed
to the Rewniaks stated that the property was conveyed sub-
ject to the $1000 Stensland mortgage, and it appears that
the purchasers were not informed of the $500 trust deed.
Rybczynski and his sister claimed that the transfer of the
Wood street property by appellee to the sister was a straight
business transaction, the sister claiming that Peter Kiol-
bassa owed her several hundred dollars prior to his death,
and that she took this property, subject to the liens, to pay

off this debt of Kiolbassa and paid in addition some $400 in money to appellee. It appears to be admitted that the Rewniaks purchased this property in good faith.

Appellee owned a farm of about 260 acres in Portage county, Wisconsin. She testified that she purchased this of her husband, paying $3000 therefor, and that the property at that time stood in the name of a brother of Kiolbassa, who deeded it direct to her. She told Rybczynski in the fall of 1905 she was going to put this farm in the hands of some Wisconsin dealer to sell. He said he had agents throughout Nebraska and Wisconsin selling farms for him and could handle the matter for her just as well as some one else. On September 26, 1905, she signed a contract giving him exclusive charge to sell or trade this property, with a provision that if the price did not exceed $5000 he was to receive five per cent, and if it exceeded $5000 he should have in commission whatever it sold for more than that. He took, or claimed to take, a prospective buyer from Chicago to visit the Wisconsin farm, appellee paying the car fare of both, and on his return told appellee the prospective purchaser thought the price was too high. She testified that he thereafter stated to her that he had a woman who would give $5000 for the farm, and she told him that was too low; that finally he stated to her that he knew a man by the name of Mlodik, who owned a house and lot known as 653 Dickson street; that he was about to get married to a woman who wanted him to live on a farm. This seems to have been some time in February, 1906. She told him she did not care to trade, but finally agreed to go with Mlodik and Rybczynski to examine the farm, she paying the expenses. Her testimony is to the effect that on arriving at Stevens Point, Wisconsin, they took a carriage to a small station called Rosholt, about twenty miles away and two miles from the farm; that before they went to the farm the papers were drawn in a bank at Rosholt, Mlodik giving a mortgage on the farm for $2500 to the

bank, signed by him as a widower. Rybczynski signed the
mortgage as a witness. Thereafter they visited the farm.
Mlodik and Rybczynski claimed they made two trips from
Chicago to the farm and that on the first trip the trade was
not made. The trade was consummated after they returned
to Chicago, the appellee claiming that Rybczynski paid her
$1400 in cash, and that he told her the Dickson street prop-
erty was free of all encumbrances, was worth $6000, and
that he could sell it for that amount in a very short time.
Counsel for appellants claim that Rybczynski paid appellee
$2720 in cash. The Dickson street house appears to have
been worth from $2500 to $2800, if clear. Deducting the
$1750 mortgage hereafter mentioned would leave an equity
of about $1000. This would make the value appellee re-
ceived for her farm from $2400 to $3720, according to
whose figures are taken as to the cash payment. Rybczynski
testified that the least selling price placed on the farm by
appellee was $5000. Out of the cash she received appellee
testified that she paid Rybczynski $100 for his commission,
and told him she would pay the rest when he sold the Dick-
son street property for her. The farm at the time of this
sale was clear of encumbrance, a mortgage of $1000 on
eighty acres of it having been paid off shortly before that
by appellee. This trade was consummated in April, 1906.
The deed from appellee to Mlodik, "a widower," is dated
April 6, 1906, and the acknowledgment is dated April 7,
1906. The acknowledgment of the mortgage to the Bank
of Rosholt is dated April 9, 1906. The Dickson street prop-
erty was encumbered at that time with an $1800 mortgage
placed on it by Rybczynski, which was released of date
June 8, 1906. Another trust deed given by the man Mlodik,
as a widower, to one William E. Hatterman, dated April 2,
1906, and recorded May 11, 1906, for $1750, was placed on
this property. It appears that Rybczynski, on the return
from Wisconsin and after the trade was consummated, kept
the deed of the Dickson street property which Mlodik, as

"a bachelor," had given to appellee, telling her he would record it the next day. This deed was dated April 10, 1906, and acknowledged the same day before Rybczynski but was not recorded until June 13, 1906. Some time in June or July of that year Rybczynski brought her this deed after it was recorded and a mutilated abstract of title to the Dickson street property. She testified that he then told her for the first time that Mlodik had somehow put a mortgage of $1750 on this property; that such a thing had never happened to him before.

At the time when Mlodik was introduced to appellee by Rybczynski as the owner of the Dickson street property that property appears from this record to have been actually owned by Rybczynski himself. It also appears that Mlodik, instead of being a bachelor, was a married man, with a wife and seven children, and that his real name was Wincenty Mlodzikowski. His half-sister had married Rybczynski in October, 1905, five or six months before the farm trade. The mutilated abstract handed to appellee of this property did not show that Rybczynski, or any of his family, had ever been the owner of the property. Neither did it show that Rybczynski had given a trust deed for $1800 on this property to a building and loan association, dated January 2, 1906.

The record in this case shows a deed from Rybczynski and his wife of this Dickson street property to the appellee by her then name, Antonina Kiolbassa, dated February 10, 1906; one dated March 19, 1906, of the same property from appellee to one M. John Lewandowski; another deed dated April 30, 1907, from Antonina Kiolbassa to one Theodor K. Gorski, describing the property, and a deed dated May 2, 1907, from Theodor K. Gorski to Antonina K. Woneto. The first of these deeds purports to be acknowledged by the lawyer, Casey; the second by a notary public named Merki. Merki and Casey were both dead at the time of this hearing. The third and fourth deeds appear to have been

acknowledged before Rybczynski. He attempted to explain his deed to appellee by saying he had been informed one evening at his home that a lawsuit had been begun against him and that he had conveyed the property to her, with her knowledge, that it might be safe from any possible judgment against him. This statement is manifestly unreasonable in view of the fact that the deed was dated February 10, 1906, and not recorded until March 3, 1906. Appellee denied that she knew anything about these deeds or that she had signed or been consulted with reference to any of them.

As showing the relations of Mlodik and Rybczynski at this time, attention should be called to certain other transactions in the record. In May, 1906, Wincenty Mlodzikowski and his wife deeded property on Clybourn avenue to Vincent Mlodik. Wincenty Mlodzikowski and Vincent Mlodik are admitted to be the same person, grantor and grantee in this deed. This instrument was acknowledged before Rybczynski by both grantors. On June 12, 1906, Vincent Mlodik, as a bachelor, executed a deed of this property to Elizabeth Rybczynski, the wife of John A. Rybczynski. This deed was acknowledged before Rybczynski himself, as notary public. The record also shows that these deeds just mentioned were recorded in the recorder's office on the same day with the deed from Vincent Mlodik to appellee of the Dickson street property and given consecutive numbers in the recorder's office, and were afterward delivered by the recorder to John A. Rybczynski personally.

Appellee owned at the time of Kiolbassa's death real estate at 625 Milwaukee avenue, Chicago, where she was then living. In March, 1907, Rybczynski undertook to sell this property for her and came to look it over with a man he called Andrew E. Hoffeld. Appellee testifies that prior to that time she had received an offer of $8000 from one Max Prusinski, who had been a partner in business with her present husband, Martin Moneta, in running a photograph gallery in Chicago. She told Rybczynski about this offer,

and states that he told her that if Prusinski bought this
property he would probably start a photograph business in
competition with Moneta, whom she was then thinking of
marrying, and advised her it would be better for her to sell
it to Hoffeld for $500 less. Hoffeld was represented by
Rybczynski to be a young German from Michigan looking
for an opportunity to go into business. She testifies she al-
lowed herself to be persuaded to sell the property to Hoffeld
for $7500. A few days afterward Hoffeld and his attorney
came to appellee's home with Rybczynski and secured from
her a deed to this property, Rybczynski representing that
Hoffeld would pay her $1400 cash and the balance of the
$7500 in thirty days. Rybczynski took the deed away with
him and within a few days returned and gave her $1400.
This deed was dated March 28, 1907. On the same day
Hoffeld made a trust deed on the premises to one James
R. Glass, as trustee, to secure a loan of $1100. This trust
deed and the deed from appellee to Hoffeld were recorded
on the same day and have consecutive numbers. About
four days later this trust deed was taken up and a mortgage
to William E. Hatterman for $3600 placed on the premises.
May 6, 1907, an instrument in the form of a trust deed was
filed for record in the recorder's office of Cook county, pur-
porting to have been executed by Andrew E. Hoffeld to
one Cassimer Ciachowski, as trustee, to secure four notes
aggregating $5900. Theresa Gorski, Rybczynski's cousin,
was made successor in trust. September 19, 1907, Hoffeld
conveyed this property to Henry Lindsey for an express
consideration of $7500. This deed was acknowledged be-
fore John A. Rybczynski. September 21, 1907, Lindsey
conveyed this property to Max Prusinski for an express
consideration of $9000, the grantee assuming the trust deed
to Hatterman for $3600. Lindsey paid nothing for the
deed and received nothing therefor from Prusinski. He
was a fellow-employee with Rybczynski and acted at his
request. He knew Hoffeld as Hoffman but did not know

that he had anything to do with the transaction. Appellee received the balance of her money for this property shortly after the property was sold to Prusinski, after she had frequently requested Rybczynski to obtain this money. She testifies that in the latter part of August or September, 1907, she received a visit from Hoffeld; that he then told her he could not carry out the trade; that later, on the same day, Rybczynski saw her and told her Hoffeld had sold the place to Lindsey. Hoffeld's real name, it is conceded, was Aloysus E. Hoffman, and instead of being a young German from Michigan he was of Polish descent, living all his life in Chicago, having been acquainted with Rybczynski for many years under his right name. Hoffman claims he had been nicknamed some years before "Hoffeld," and that he took the property on Milwaukee avenue in that name because he did not want to have it known that he was purchasing real estate. He and Rybczynski testified that they told appellee, at the time they were negotiating the trade, that his real name was Hoffman but that he was known generally as Hoffeld. She denies that any such statement was made to her. Max Prusinski, who purchased this property, is the same Prusinski who had offered appellee $8000 for it before she sold it to Hoffman under the advice of Rybczynski.

When appellee made the trade of her Wisconsin farm for the Dickson street property with Mlodik in April, 1906, she had residing as a tenant in a part of her premises at 625 Milwaukee avenue one Frances Ciesielski, an appellant herein, who resided there with two daughters in four rooms, paying eight dollars a month, and which the testimony tends to show she found it difficult to pay promptly. Appellee, when she left for Wisconsin, requested Mrs. Ciesielski to look after her rooms. On her return, two days afterward, Mrs. Ciesielski and her daughters had moved out without leaving any word as to their whereabouts. Mrs. Ciesielski was the mother of Mlodik and of Rybczynski's wife, al-

249 — 5

though this was not known to appellee until long after this transaction. April 9, 1907, Mlodik and wife deeded the Wisconsin farm to Frances Lepinski, which was the maiden name of appellant Frances Ciesielski, and the deed was intended to convey the property to said appellant under the former name. May 5, 1908, under the name of Lepinski, she mortgaged the Wisconsin farm to T. W. Anderson, of Stevens. Point, to secure an indebtedness of $3500. She gave another mortgage on the farm September 7, 1908, to secure a loan of $1000, to one William Zimmer. Frances Lepinski, as a widow, conveyed 180 acres of the Wisconsin farm to the appellant Aloysus E. Hoffman by deed dated December 5, 1908, recorded May 11, 1909. Hoffman and Rybczynski testified this deal was negotiated by Rybczynski for his mother-in-law; that Hoffman loaned to Mrs. Ciesielski $1000; that she gave her note to Hoffman for this amount, and also signed a deed which Rybczynski made, with the understanding that if the note was not paid in six months the deed was to be recorded, and that the note not having been paid, the deed was recorded. The record also discloses that Hoffman gave a mortgage May 18, 1909, to Louise Stranczewski on the 180 acres of the Wisconsin farm for $3500, $1000 of which amount was to secure the note given by Frances Lepinski to William Zimmer, and the balance, $2500, to secure a note executed by Hoffman to Louise Stranczewski, the sister of John A. Rybczynski.

After Mlodik traded for the Wisconsin farm he went to live on it and was living there with his wife and family at the time his testimony was taken. His mother claims that she took this farm from him to pay for certain loans she had made to him from time to time. The testimony shows that his mother never owned any real estate previous to this farm being deeded to her and for years had been in straitened circumstances. Except her own testimony there is nothing to indicate that she had means of any kind. All the testimony in the case tends to show that she was prac-

tically supported by her children for years previous to this farm being deeded to her and was without any other visible means of support. She had been twice married,—once to a man named Mlodzikowski and the second time to Ciesielski, who had disappeared several years previous and whose whereabouts was not known at the time of the trial. The only explanation that Wincenty Mlodzikowski made for changing his name to Mlodik was that he wanted it shorter, and this is the only explanation that is attempted to be given by Rybczynski. Mlodik himself, even after the time this bill was filed, stated that he was a widower. He does not attempt to deny this, but only said, when questioned in regard to this and other admissions, that he could not understand English very well. The Dickson street property that Mlodik exchanged for the Wisconsin farm was deeded to him by one M. John Lewandowski. Mlodik claimed that he did not know this man until he purchased the property of him; that he saw the advertisement for the sale of this property in a Polish newspaper, looked up Lewandowski and made the trade. The evidence is uncontradicted that Lewandowski was a relative of John A. Rybczynski and had lived for years previous to this in the family of Rybczynski's father.

We shall not attempt to set out in any greater detail the evidence in this record showing the relationship of Rybczynski with the appellants and appellee and with all the interwoven transactions that are involved in this litigation. Sufficient has been set out to show, generally, the relationship of these parties and the character of the various transactions.

The testimony was all heard in open court before the chancellor, except the deposition of Mlodik, which was taken in Wisconsin and read in court. The chancellor found that Rybczynski was the agent of the appellee in the sales of the real estate herein referred to; that he had defrauded and swindled appellee out of the property on Milwaukee avenue,

the Wood street property and the Wisconsin farm; that he had used appellant Frances Ciesielski, (*alias* Lepinski,) appellant Aloysus E. Hoffman, (*alias* Andrew E. Hoffeld,) Louise Stranczewski and the said Wincenty Mlodzikowski (*alias* Vincent Mlodik,) to that end; that the Dickson street property, in Chicago, was in fact owned by John A. Rybczynski when it was traded for the farm; that Mlodzikowski obtained title without paying any consideration therefor, and at the time of the exchange was holding the same for the benefit of the said John A. Rybczynski; that for the purpose of concealing the fraud in the deal in the Wisconsin farm and for the purpose of clouding the title thereto, and in order to prevent appellee from discovering the fraud that had been perpetrated on her, the said Wincenty Mlodzikowski, by the name and style of Vincent Mlodik, made a warranty deed to said farm in Portage county to the appellant Frances Ciesielski by the false and assumed name of Frances Lepinski; that said instrument was without consideration, and that said appellant Frances Ciesielski paid nothing for the title to said premises; that for the purpose of further clouding the title the appellant Frances Ciesielski, by the name of Frances Lepinski, made a false and fraudulent deed to appellant Aloysus E. Hoffman of 180 acres of said farm, and said Hoffman, at the instance of John A. Rybczynski, gave a fraudulent and pretended mortgage on a portion of the farm conveyed to him, to Louise Stranczewski, the sister of Rybczynski; that said note of $2500 to said Louise Stranczewski, and said mortgage, so far as it purported to secure said note of $2500, were null and void. The decree also provides that Rybczynski shall pay appellee certain amounts in compensation for the loss sustained by her in the transactions concerning the real estate held by innocent third parties as *bona fide* purchasers.

There is an irreconcilable conflict in many particulars in the testimony in this record. The evidence was heard by

the chancellor. Under such circumstances the findings of the court will not be set aside unless they are clearly and palpably erroneous. (*Whitmore* v. *Whitmore*, 243 Ill. 540; *Fabrice* v. *Von der Brelie*, 190 id. 460; *Kusch* v. *Kusch*, 143 id. 353.) We find no such clear and palpable error. On the contrary, the findings of the court appear to be sustained by the weight of the testimony.

While it is true that appellee had had considerable experience in business matters, it is very clear that she was little acquainted in Chicago before she married Kiolbassa, and knew very little about real estate matters and values or of probate matters. All the testimony tends to bear out her contention that she relied in most of these matters, and especially on real estate questions, upon the judgment and advice of John A. Rybczynski. The evidence shows conclusively that he was her agent and confidential adviser in these matters. An agent cannot deal with his principal's property for his own advantage without the knowledge of such principal. *Salisbury* v. *Ware*, 183 Ill. 505; *Eldridge* v. *Walker*, 60 id. 230.

Rybczynski's brother-in-law, Mlodzikowski; his mother-in-law, Frances Ciesielski; his sister, Louise Stranczewski; his cousin, Lewandowski; his political associate and co-worker, Hoffman,—each and all gave most unsatisfactory testimony as to how they obtained the means to be used in purchasing the respective interests which they at times had in their names, as shown on this record. None of them gave any clear account as to where they obtained any appreciable portion of the money. They showed no bank books or bank accounts or gave any definite account of any property they had owned, either personal or real, that would furnish them means to buy the real estate. Hoffman only claimed to have had $500 or $600 when he purchased the Milwaukee avenue property. He and Rybczynski both claimed that when that property was finally sold, through Lindsey, to Prusinski, Hoffman turned over to Rybczynski

$300 because the latter had assisted him in making a clear profit of $1500. It is conceded that the Milwaukee avenue property was sold to Prusinski,—the very man who had offered to buy it of appellee before she sold it to Hoffman,—for $1500 more than she received, and, while it is disputed by Rybczynski and his sister, the evidence all tends to bear out the appellee's claim that she received from the Wood street property only $74, and that the sister was paid by the Rewniaks $1500 cash over and above the encumbrance. Appellants claimed that the Wisconsin farm was not worth over $5000 or $6000, but in our judgment the weight of the evidence tends to show that this farm was worth, at the time it was conveyed to Mlodzikowski, at least $8000. There can be no question from this record that the Dickson street property actually belonged to Rybczynski; that it was not as valuable as he assured appellee it was, and that, although he represented it to be clear, it was encumbered by a lien of $1750. The various versions of these transactions as given by Rybczynski, Mlodzikowski, Mrs. Ciesielski, Hoffman and Mrs. Stranczewski are so incredible on their face that it would be difficult to give them any credence even if they were not opposed by many surrounding facts and circumstances and other testimony which is conceded to be true. Rybczynski was the principal actor in weaving this tangled web of fraud and misrepresentation. He was the leader and all the others were as puppets in his hands. We would be disposed to hold, under the authorities, that the facts on this record show that a fiduciary relation existed between Rybczynski and appellee, and that therefore the burden rested upon Rybczynski to show that he acted with the utmost good faith and did not betray the confidence reposed in him, (*Beach* v. *Wilton,* 244 Ill. 413; *Hensan* v. *Cooksey,* 237. id. 620;) but the badges of fraud are so clear and patent on all these transactions that it is not necessary in this case to rely upon the doctrine of fidu-

ciary relations in order to sustain the decree of the superior court.

Counsel for appellants contend that appellee is barred by *laches* from having the relief prayed for in her bill. There is no *laches* where there is no knowledge, and delay will not bar relief where the injured party was ignorant of the fraud. (*Bishop* v. *Thompson,* 196 Ill. 206.) It appears from this record that appellee learned that she had been deceived as to the value of the Dickson street property in the summer of 1907, but her testimony is clear that she did not know of the relation of Rybczynski with all the other parties to the various transactions until a short time before she filed this bill. The Statute of Limitations does not strictly apply to cases in equity. (*Greenman* v. *Greenman,* 107 Ill. 404.) The claim that appellee has been guilty of such *laches* as to bar her right to recover as against the appellants is without merit. The decree fully protects the Rewniaks, who bought the Dickson street property in good faith, Prusinski, who bought the Milwaukee avenue property in good faith, and all of those who in good faith secured liens on the various properties, including the Wisconsin farm. The record does not show that there has been any undue delay on the part of appellee in bringing this litigation after the discovery of the frauds. Even if there had been, there is no pretense of any prejudice resulting to appellants by reason of such alleged neglect or non-action.

What we have already said disposes of practically all the contentions that are raised in the briefs. Without setting out at length the findings of the decree as to the deeds to be signed by appellants, the release by Louise Stranczewski and the accounting by John A. Rybczynski, we deem it sufficient to say that we think these findings are in full accord with the conclusions heretofore reached in this opinion.

The decree of the superior court will be affirmed.

*Decree affirmed.*