ALICE SINCLAIR JONES, Appellee, *vs.* ELIZA J. JENKIN-
SON, Appellant.

*Opinion filed February 17, 1925—Rehearing denied April 9, 1925.*

1. ACCOUNTING—*when findings of the chancellor cannot be dis-
turbed.* Where the findings of the chancellor in an action for an
accounting of a partnership venture in real estate are not mani-
festly against the weight of the evidence or palpably erroneous the
Supreme Court cannot disturb the findings on conflicting evidence.

2. DEEDS—*when a resulting trust arises from joint purchase of
real estate.* Where two parties are to have equal interests in real
estate and one of them purchases the land with their joint funds
and takes title in his own name a trust results in favor of the other
as to his portion of the real estate; and this is true whether the
parties are to be partners in the ownership of the land, tenants in
common or otherwise.

3. SAME—*when fraud arises out of agreement for joint invest-
ment in real estate—accounting.* Representations that an option has
been obtained for land at a certain price when, in fact, the option
was secured by one of the parties for a less price or a rebate was
to be made thereon, upon which representations the other relies
in entering into an agreement for the purchase of the land jointly,
constitute actual fraud entitling the other to an accounting even
if no partnership is formed.

4. EQUITY—*when court may deny filing of amended answers.*
·Where a cause has been completely tried out on other issues, the
.chancellor does not abuse his discretion in denying the filing of
amended answers setting up the defenses of *laches* and the Stat-
ute of Frauds..

5. SAME—*application of Statute of Frauds in equity—laches.*
Where a statute fixes the time within which to bar a claim when
asserted at law, courts of equity will refer to the statute to ascer-
tain a reasonable time in which the bar will be complete in equity;
but mere lapse of time is no bar where an excuse is given which
renders it inequitable for the bar to be interposed, and where no
statute is applicable the time in which a party will be barred by
*laches* depends upon the circumstances of each case.

6. TRUSTS—*resulting trust is not affected by Statute of Frauds.*
A resulting trust arises upon the allegation and proof of owner-
ship of the funds used in making a purchase of land and does not
depend upon a contract of the parties made prior thereto, and such
a trust is not, therefore, affected by the Statute of Frauds.

APPEAL from the Circuit Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding.

GRANVILLE W. BROWNING, for appellant.

JOHN A. BROWN, for appellee.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

On April 26, 1922, appellee, Alice Sinclair Jones, filed her bill in the circuit court of Cook county against appellant, Eliza J. Jenkinson, praying that the court declare the interests of the parties respecting a joint investment in certain lots in the city of Chicago and for an accounting between them. The defendant filed her answer to the bill, and on a hearing the chancellor entered a decree granting the relief prayed and ordering defendant to convey a half interest in four certain lots to complainant. The defendant prosecutes this appeal.

On July 23, 1919, Abraham S. Silverman was the owner of 49½ lots in Fred C. Bendle's subdivision of block 3 of Murray's Wildwood addition in the southeast quarter of section 28, township 37, north, range 14, east of the third principal meridian, in Cook county, and on that day, through his agent, Israel Simons, contracted to sell said lots to appellant for $10,000, $1000 of which was to be paid in a twenty-acre tract of land in Wisconsin owned by appellant. On all of these lots except lot 62 there was a mortgage securing an indebtedness of about $2100, which was to be assumed by appellant. It appears from the testimony of Benjamin Wolf, an attorney who drafted the deeds, of Silverman, who contracted the lots to appellant, of Simons, who closed the deal between Silverman and appellant, of Florence Carlson, a stenographer in Wolf's office, of Margaret E. Shanks and of James J. Hoch, that appellant received the deed to

her and appellee from Silverman to 45½ of the lots on August 11, 1919; that at appellant's suggestion the consideration named in the deed was $16,000, although she had contracted to pay Silverman only $10,000 for the entire 49½ lots; that she asked Silverman to deed the other four lots (18, 19, 61 and 62,) to Miss Carlson, and that he so made the deed to her on August 11, 1919, the consideration named in this deed being $10; that Miss Carlson deeded lots 61 and 62 to appellant on August 15, 1919, and that later she deeded lots 18 and 19 to her; that on February 15, 1921, appellant deeded the four lots to Margaret E. Shanks, and on April 26, 1921, Margaret E. Shanks deeded the lots to appellant; that no consideration passed between either appellant and Miss Carlson or between Margaret E. Shanks and appellant for any of the deeds. The only explanation that appellant gave for these various deeds of the four lots was, in substance, that it would save her money; that she considered them very valuable and wanted to keep them; and that she had a suit pending against her and did not want to have any more in her name than necessary.

Appellee testified, in substance, that in the first part of August, 1919, she sold a house and lot in which she had been conducting a rooming house, for about $6000 cash, and that she had $8887.70 in the Bank of Montreal, concerning which facts she informed appellant, with whom she was then quite friendly. Appellant had been in the real estate business in the city of Chicago for several years and was well acquainted with real estate values but appellee knew very little about the valuation of real estate. Appellant told her about the Silverman lots and persuaded her to go out to see them. She said it was a wonderful buy and that the lots could be purchased for $16,000, clear of all encumbrance, and suggested that they each put in $8000 and buy them and they could sell them for a large profit. They went out to the lots and walked over and looked at all of them. Appellant specifically pointed out lots 18, 19,

61 and 62 and said that those corner lots could be sold for $8000 or $10,000. She also pointed out another lot with a shack on it, which was not included in the deal. Appellee had never seen the lots before. Relying upon appellant's representations and without any investigation upon her part she assented to appellant's proposition and gave her a cashier's check for $8000 on said bank, and at appellant's suggestion left the matter of consummating the purchase and getting the deed to appellant. A few days later appellant told her that she had made the transaction and that the title to the lots was in their names. About two weeks after appellant told her that she had closed the deal she told appellee that she had purchased the lots cornering on Michigan avenue and 127th street and upon Indiana avenue and 127th street, being lots 18, 19, 61 and 62. Appellee protested that these lots were included in their joint purchase but appellant stated that they were not, and although asked by appellee appellant refused to state how much she had paid for those four lots. A few days later appellant told appellee that the lots they had purchased were subject to a mortgage which would have to be paid. Appellee told her that she understood that the lots were free from encumbrance and that she was not prepared to pay her half of the mortgage. Appellant offered to, and did, lend appellee the money to pay appellee's half of the mortgage and took her note for $1067. About six months later appellant loaned appellee about $1000 more and took her note for $2000 and a trust deed for the full amount owed her, on appellee's half interest in 45½ of the lots. When the $1067 fell due appellee told appellant that she could not pay it and appellant started suit against her. The note was later extended and the suit dismissed. The South Side Bank is suing her now on the $2000 note. She paid some taxes on the 45½ lots through appellant. She told appellant frequently that she had a half interest in the four corner lots. Appellant always said no,—they were not included in the

deal. It appears from appellee's testimony and other evidence in the case that she did not learn of the fact that appellant contracted for the 49½ lots for a consideration of only $10,000 until after the bank began the foreclosure proceedings against her for the $2000 loan, or after March 12, 1922.

Appellant's testimony was in substance the following: She and Mrs. Jones were very friendly before August, 1919. Mrs. Jones had bought several vacant lots from her, near Pullman, and had bought through appellant an eight or ten-flat building in Chicago in 1920. On August 9 Mrs. Jones came to her office and she told Mrs. Jones that she had bought the property about which she had told her about three weeks before that. Mrs. Jones then asked her why she did not let her in on some of "these good things." She then asked Mrs. Jones to go out and see the lots in question. She pointed out lots 61, 62, 18 and 19 and told her that she was not going to sell those but was going to hold them. She told Mrs. Jones that it would cost her $8000 for a one-half interest in the other 45½ lots. Mrs. Jones agreed to that proposition, gave her a check for $8000 for her half interest, and told her that she did not care to be present when the deal was closed because she knew appellant was capable. When the deeds were executed Wolf suggested that it would be a good thing to make the consideration in the deed $16,000 or more, and she said that they would make the consideration for said amount,— that that would be all she would want to buy stamps on.

The testimony in the record amply supports the court's findings in favor of appellee. Appellant and appellee are the two main witnesses, and about the only witnesses, as to their contract, but the circumstances testified to by them and the other witnesses are in the main corroborative of appellee in her testimony. The encumbrance that appellee helped to pay was on all the lots in question. Appellant's conduct as to the other four lots, having them deeded to

other parties and having them re-deeded to her in a circuitous manner, is not satisfactorily explained by her as in harmony with her theory of the contract. While appellee is contradicted by some of the witnesses as to some of her statements that are not very material to this inquiry, yet there is no reason disclosed for this court to disturb the findings of the trial court. The findings of the court are not manifestly against the weight of the evidence or palpably erroneous, and under the holdings of this court in other cases such findings must stand. *Moneta* v. *Hoffman*, 249 Ill. 56.

The bill contains a prayer for general relief. It substantially sets out the facts upon which appellee predicates her right of recovery. Under the findings of the court appellant practiced a fraud upon appellee in misrepresenting to her the amount appellant was to pay Silverman for the lots and in excluding from the deed from Silverman four of the most valuable lots bought from him. She accepted appellee's money and used it in paying for all the lots and in a circuitous manner took title in herself to the four lots to which she had agreed to give appellee title to a one-half interest. Where two parties have or are to have equal interests in real estate and one of them purchases the land with their joint funds and takes title in his own name, a trust results in favor of the other as to his portion of the real estate, title to which is taken in the name of the one consummating the deal. This is true whether the parties are to be partners in the ownership of the land, tenants in common or otherwise. (*Crone* v. *Crone*, 180 Ill. 599; *Harris* v. *McIntyre*, 118 id. 275; *Davis* v. *Hamlin*, 108 id. 39.) Representations that an option has been obtained for land at a certain price when in fact the option was secured by one of the parties for a less price, or where a rebate was to be made thereon, upon which representations others rely in entering into an agreement for the purchase of the land jointly, constitute actual fraud entitling the others to an

accounting, even if no partnership was formed. *Bunn* v. *Schnellbacher,* 163 Ill. 328.

The decree in this case was entered on May 8, 1923. On that day, before the decree was entered, appellant asked leave to file an amended answer, which was denied by the court. A like request was denied on May 19. In the amended answers proposed, appellant set up the defenses of *laches* and the Statute of Frauds. Neither of these defenses was set up in the original answer. These answers were properly denied under the discretion which the court has after a cause has been completely tried out on other issues. Besides, a resulting trust arises upon the allegation and proof of ownership of the funds used in making a purchase of land and does not depend upon a contract of the parties made anterior thereto. Such a trust will not, therefore, be affected by the Statute of Frauds. Mere lapse of time will be no bar if an excuse is given which takes hold upon the conscience of the chancellor and is such as renders it inequitable that the bar should be interposed. Where the statute fixes the time within which to bar a claim when asserted at law, courts of equity will refer to the statute to ascertain a reasonable time in which the bar will be complete in equity. Where there is no statute applicable, the time in which a party will be barred in equity by *laches* necessarily depends upon the particular circumstances of each case. (*Harris* v. *McIntyre, supra.*) Appellee in this case did not learn the extent to which she had been defrauded by the appellant until very shortly before her bill was filed. Neither the defense of *laches* nor the Statute of Frauds would have been availing to appellant had she pleaded the same in the first instance.

The decree of the circuit court is affirmed.

*Decree affirmed.*