(No. 21576.—)

DIETRICH G. REINKEN, Defendant in Error, *vs.* LOUISE M. E. REINKEN, Plaintiff in Error.

*Opinion filed February 23, 1934—Rehearing denied April 4, 1934.*

HERRICK and FARTHING, JJ., dissenting.

CUTTING, MOORE & SIDLEY, (CHARLES S. CUTTING, and RALPH F. HIMMELHOCH, of counsel,) for plaintiff in error.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, (DON KENNETH JONES, WILFRED M. DOHERTY, and JOHN M. BAKER, of counsel,) for defendant in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

This is a writ of error to the circuit court of Cook county to review a decree of that court granting a divorce to the original complainant, Dietrich G. Reinken, from the original defendant, Louise M. E. Reinken, upon the ground of adultery, and dismissing as without equity the cross-bill of the original defendant against the original complainant on the ground of desertion.

Plaintiff in error refused to pay the jury fee required by section 33 of the Fees and Salaries act for services of a jury in counties of the third class and upon such refusal

was denied a jury trial. She assigns this refusal as error, claiming that said section contravenes the constitutional provision that "all laws relating to courts shall be general and of uniform operation; and the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade so far as regulated by law and the force and effect of the process, judgments and decrees of such courts severally shall be uniform." (Const. art. 6, sec. 29.) This point has been decided contrary to the contentions of plaintiff in error in the case of *Hunt* v. *Rosenbaum Grain Corp.* (*ante,* p. 504,) and the decision in that case is applicable and binding in this one. The *Hunt case* was an action at law, in which there was a right to trial by jury as at common law, while this case is a suit for divorce, in which the right to trial by jury is given by the statute. The provision for payment of the jury fee is, however, common to both cases and is governed by the same rule.

It is argued with much earnestness and at great length that the findings of the chancellor are contrary to the weight of the evidence and that the decree should be reversed for that reason. Briefly, the facts disclosed by the record are as follows: The parties were married on May 28, 1928, at which time the husband was sixty-six years of age and the wife thirty-three. Both had been married before, the husband's first wife having died in 1922, and the wife having divorced her second husband nine days before her marriage to the defendant in error. The husband had three adult children, two of them married, and several grandchildren. The wife had one son, who was about fifteen years old at the time of her marriage to the defendant in error. It appears from the record that the husband owned considerable property, mostly acquired out of the savings and accumulations of himself and his first wife during his first marriage. He was engaged in the furniture and decorating business in Chicago with his two sons under the name

of Reinken & Co., and the plaintiff in error for a time was employed by this company in the Chicago office. She was first married in 1912 to Alfred Ellis in Georgia, from which State they came to Chicago in 1917 and after which time Ellis died. On August 7, 1926, she married Elmer L. Hitt, and remained his wife until nine days before her marriage to defendant in error. During the existence of this marriage, of which the record shows the defendant in error was ignorant, the plaintiff in error accepted the attentions of the defendant in error and became engaged to marry him. About a month before she obtained a divorce from Hitt she entered into a pre-nuptial agreement with the defendant in error, which she signed and acknowledged before a notary public as "Louise M. Ellis, a widow." There is evidence in the record to support the finding of the trial court that during the period of about five years prior to her marriage to defendant in error she had been receiving money from him, asking for it on the ground that she needed it to live on. Immediately after the marriage the parties went on a wedding trip by automobile and were accompanied on that trip by the plaintiff in error's sisters, brother and brother-in-law. The testimony of defendant in error was that she treated him coldly and sulked the whole of the time on that particular trip. After they returned to Chicago from the wedding trip she brought a brother in to live with them, and early in August, following their return in June, she, with her brother, her sister and two other women, made an automobile trip to the south to visit the plaintiff in error's mother and to buy a home for her, for which the defendant in error paid. They were gone about a month on this trip. Shortly after returning from this trip she made a trip to New York, being gone about forty days, and upon her return was accompanied by a man named Gregory, a stranger to defendant in error. Upon the evening of the day they arrived in Chicago, the plaintiff in error, with Gregory and two others, went to a theater

party, returning home after four o'clock the next morning. Shorty after that, and within a month or six weeks, the plaintiff in error again left home by automobile, going to visit her mother in Alabama and being gone about a month. She seemed to have made this trip alone and without her husband and without his knowledge that she was going to leave. On the trial the defendant in error testified that he loved his wife and wanted her to live with him. Upon the judge asking her the same question she evaded a direct answer and testified they never had lived as husband and wife. Shortly after her return from Alabama the defendant in error decided that he could no longer stand the expense of the apartment in which they were living on Sheridan road, in Chicago, and secured another apartment on West Elm street, to which he moved the family belongings. She refused to go along with him, going instead to the house of a friend, where she stayed some little time, and then finally leased an apartment in the Delaware-Towers building, 25 East Delaware place, Chicago, at which apartment the various acts of adultery charged and proved took place.

During the period of their separation, before the filing of the original bill herein, many letters were exchanged between the parties, the greater number of which appear to have been supervised by counsel—a kind of "diplomatic correspondence," as the learned chancellor called it in his findings. Plaintiff in error admitted that most of her letters were either written by or approved by her attorneys, and her object apparently was to create a situation which would indicate a desertion on the part of the defendant in error. So far as the letters are concerned, there was testimony of both parties in explanation of them and also testimony on the part of defendant in error as to replies made by him in person and by telephone. The trial court found from all of the evidence that neither of the parties was very sincere about the letters and gave them no weight

in determining the issues. During the time the parties were married, the record shows that Reinken furnished his wife with $7445.75, in addition to $1125 paid for a fur coat, and that after their separation he continued to make payments to her which aggregated $3674.

In May of 1930, as a result of certain rumors coming to his attention, Reinken employed a private detective agency to make an investigation of his wife's manner of living in the Delaware-Towers apartment. Without going into details, the voluminous record may be summarized by saying that this investigation showed that a man by the name of Von Zukeschwerdt was a constant visitor at the apartment and frequently remained there over night under circumstances such as to appear suspicious. Besides this, the plaintiff in error and Von Zukeschwerdt were frequently together at other times and places. After securing what appeared to be sufficient evidence a warrant was sworn out, and on the night of July 3, 1930, the apartment was raided by police officers. The plaintiff in error and Von Zukeschwerdt were there in the apartment, the latter being in a fainting condition. The private detectives, and the defendant in error himself, who had been with them on various nights, testified to securing a room in a hotel across the street from the Delaware-Towers apartment and to various things which were seen by them from that position. Without giving space in this printed report to all of the salacious details, it is sufficient to say that the evidence given, if believed, was sufficient to prove adultery on many occasions.

The plaintiff in error and the co-respondent, Von Zukeschwerdt, attempted to explain the obvious incriminating circumstances by saying that his business, that of a salesman of bakery supplies and machinery, required him to be down in the city of Chicago very frequently at early hours in the morning, when bakers were most likely to be at work; that Mrs. Reinken had been an old friend of

his in their youth and that he desired to help her out in maintaining the expensive apartment in which she was living, and that he therefore paid her $40 a month at one time and $60 a month at another time in order to have a place near the loop in which he could change his clothes and where he could spend the night, if required. Although married and living in Evanston, and although claiming that he had used the apartment for social functions at times, it was noticeable in the testimony that he never brought his wife to this particular place. His testimony as to the very small number of nights spent by him in the apartment, if taken as true, makes it apparent that he was paying exceedingly high for hotel accommodations only. Other witnesses were produced who claimed they were the ones who had been seen doing the hugging and kissing in the apartment, but on the whole record offered, including the testimony of the plaintiff in error herself, the co-respondent, Von Zukeschwerdt, and the other witnesses, it would require more credulity than common sense to believe the explanations offered.

We will not go further into the details and testimony in this case, as it can have no possible public interest. It is enough for us to say that the evidence is sufficient to support the findings of the chancellor, who saw the witnesses and heard them testify. Under such circumstances this court will not disturb a finding of facts thus made. *Jones* v. *Jenkinson,* 316 Ill. 264; *Moneta* v. *Hoffman,* 249 id. 56.

The decree of the circuit court of Cook county is affirmed.                                    *Decree affirmed.*

HERRICK and FARTHING, JJ., dissenting:

For the reasons given in *Hunt* v. *Rosenbaum Grain Corp. (ante,* p. 504,) we dissent from that part of the majority opinion of the court which holds as constitutional section 33 of the Fees and Salaries act.