(No. 33993.—

ORVILLE P. FOX, Appellee, *vs.* MARY V. FOX, Appellant.

*Opinion filed November 26, 1956.*

SEDLAK & PALLARDY, and CAPLOW & KELLEY, both of Chicago, (C. A. CAPLOW, of counsel,) for appellant.

O'BRIEN, BURNELL & PUCKETT, of Aurora, (WILLIAM C. O'BRIEN, WILSON D. BURNELL, DONALD L. PUCKETT, JOSEPH H. BARNETT, and HENRY D. CASEY, of counsel,) for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

Orville P. Fox, plaintiff, brought suit for divorce against his wife, Mary V. Fox, defendant, on the grounds of cruelty and habitual drunkenness. The wife, by her amended counterclaim for divorce, charged her husband with cruelty, sought alimony, the appointment of a receiver for certain valuable real estate in Aurora and the

business operated on said premises, an accounting of plaintiff's income, and an adjudication that she be declared the owner of a portion of such property. After hearing by the trial court, without a jury, a final decree was entered which granted the plaintiff a divorce and dismissed the defendant's counterclaim, whereby all the relief which she sought was denied. The defendant's counterclaim, asking that she be adjudged part owner of certain real estate, involved a freehold and a review of the lower court's decree is properly before this court. *Engler* v. *Engler,* 313 Ill. 527.

The defendant asserts that the trial court erred in denying her motion for a jury trial; that said court had a duty to adequately protect her rights as a person who was mentally ill; that said court rendered its decree contrary to the manifest weight of the evidence both on the complaint and her amended counterclaim; and that said court erred in failing to grant her relief prayed in respect to property, support and alimony, medical bills and attorneys' fees.

The trial of this cause consumed several days. The voluminous record and its many exhibits have received our consideration. The parties were married in 1923 when both were young and in straitened circumstances. Two sons were born of the marriage, one in 1924 and one in 1926. A daughter born in 1928 died in 1931, and in addition the defendant sustained two miscarriages. Throughout the years of their married life, the plaintiff was engaged in several business enterprises. The evidence is conflicting relative to the extent of the defendant's assistance in these businesses; she claimed a substantial contribution to these ventures, while the plaintiff depreciates this assertion and describes her effort as being of negligible value. It appears that for several years the economic and financial status of the parties had not been substantially enhanced, except as due to the appreciation of property values. The turning

point in the plaintiff's finances appears to have occurred in 1943 when he claims he interested Carl Olson in the purchase of a packing plant and convinced him that it could be sold for a profit. The plaintiff testified that when the profit was realized, Olson paid him approximately $2500 for his services. Late in 1943, the plaintiff contracted for the purchase of Exposition Park in Aurora for $125,000, making a down payment of $2500 with the money he received from Olson. The defendant also claims credit for inducing this purchase and testified that she did considerable work in and about the operation and management of the park enterprises, all of which was denied by the plaintiff, his witnesses and some of the witnessess called by the defendant.

The cause was pending in the lower court for more than four years after defendant filed her appearance. Four different sets of attorneys represented the defendant prior to April 19, 1955, and none of them filed a jury demand in the case. On March 23, 1955, the court set the case for final hearing without a jury. The record reflects that during the four-year interval the defendant appeared in court on various preliminary matters. Not until April 19, 1955, did she file a jury demand. On plaintiff's motion, on April 27, 1955, the court ordered this jury demand stricken. On May 2, 1955, the defendant filed a motion to vacate this order and to grant her a jury trial. This motion was denied. Early in 1953 the cause had been continued by agreement of defendant. Rule 15 of the circuit court of Kane County provides that all cases submitted to the court in any manner, for trial without a jury, shall remain submitted unless the court, for good reason shown, shall order otherwise. Section 7 of the Divorce Act of 1874 (Ill. Rev. Stat. 1953, chap. 40, par. 8,), provides that when the defendant appears and denies the charges in the plaintiff's complaint for a divorce, either party shall have the right to have the cause tried by a jury. In 1935, section 6 of the Divorce

Act (Ill. Rev. Stat. 1953, chap. 40, par. 7,) was amended to make process, practice and proceedings in divorce actions the same as in other civil cases, unless otherwise provided by the Divorce Act. At the same time section 64(1) of the Civil Practice Act provided: "(1) A plaintiff desirous of a trial by jury shall make his demand for a jury in writing, and file such demand with the clerk at the time suit is commenced, and a defendant desirous of a trial by jury shall make such demand and file the same at the time of filing his appearance; otherwise such party shall be deemed to have waived a jury." (Ill. Rev. Stat. 1953, chap. 110, par. 188(1).) Section 1 of the Civil Practice Act (Ill. Rev. Stat. 1953, chap. 110, par. 125.) provides that the act shall extend to all civil proceedings except as limited therein, and divorce proceedings are not removed from its application.

Thus, the defendant waived her right to a jury trial under the provisions of both the Divorce Act and the Civil Practice Act by her failure to demand a jury trial when she filed her appearance in the divorce action. Such waiver provision does not violate our constitutional guarantees of trial by jury. In *Reinken* v. *Reinken,* 355 Ill. 539, we held that a provision for the payment of jury fees as provided in section 33 of the Fees and Salaries Act was not in violation of the constitutional provision that all laws relating to courts shall be uniform. The decision was based on *Hunt* v. *Rosenbaum Grain Corp.* 355 Ill. 504, wherein the court held that a statutory provision requiring a demand for a jury trial and the advancing of the jury fee is not an unconstitutional restriction of the right of trial by jury.

Neither do we find the trial court guilty of an abuse of discretion in denying the jury demand which was filed herein more than four years after the defendant entered her appearance in the case at bar. In the case of *Stephens* v. *Kasten,* 383 Ill. 127, we held that the denial of defendant's late jury demand was an abuse of discretion. The

facts in that case are clearly distinguishable from those here. The *Stephens case* was an automobile negligence case involving conflicting factual determinations upon the question of defendant's liability. Under the record of this case it is clear that only one conclusion could follow from the evidence adduced, and that is that defendant was guilty of habitual drunkenness as charged. Had a jury been empanelled and found otherwise, the trial court would have been compelled to set aside such verdict. No prejudice can therefore be justly claimed by defendant.

In respect to defendant's assertion concerning her disability, we feel that no good purpose can be served by narrating in detail all of the medical findings. It is sufficient to say that at various intervals in the past several years, the defendant was confined in institutions and sanitariums. The defendant filed a motion for the withdrawal of the motion for the appointment of a guardian *ad litem* on her behalf. This motion was heard by the late Judge Harry C. Daniels, who found that the defendant was under no mental disability. From the defendant's testimony in the record, we concur in the correctness of that conclusion. We also note that her present counsel had no question of her mental competency in that he entered into a written contract with her concerning attorneys' fees. If there was any question as to her competency, we feel that the trial judge would have exercised every precaution for her protection.

The cases cited by defendant concerning the special equities, which were urged to exist in her favor, for a favorable decree in the Exposition Park property, are based upon different factual circumstances existing in the particular cases. In *Insoda* v. *Insoda,* 400 Ill. 596, it clearly appeared from the evidence that the husband had worked and turned over his pay checks to his wife; that the savings resulted from their joint efforts; that the wife managed all the financial transactions; that the business was purchased from these joint savings; and that the husband

worked in the business and contributed to its profits, which, in turn, were invested in the real estate in controversy. In the case of *Cross* v. *Cross,* 2 Ill.2d 104, it appeared that there was a misunderstanding as to the facts pleaded in the wife's supplemental counterclaim. When her attorney sought to introduce proof he expressly stated it was offered to establish her equitable interest in the property involved. The trial court believed the evidence was not sufficient to establish a resulting trust and denied the admission of the testimony. Neither in the original divorce hearing, where the question was reserved, nor in the supplemental counterclaim hearing, was the wife given an opportunity to be heard upon the issue of adjusting her alleged equities in the property as permitted by section 17 of the Divorce Act. We there held that the wife was entitled to a full hearing on the issue and that the lower court erred in refusing proof of the equities alleged. We declared in *Sykes* v. *Sykes,* 404 Ill. 152, at page 156, "We have often stated the rule in this State to be, as expressed in *Podgornik* v. *Podgornik,* 392 Ill. 124, that under section 17 of the Divorce Act, 'the court, in a divorce action, may compel the conveyance of property held by one party which, in equity, belongs to the other, and may adjust the equities of the parties in any property owned by them jointly. In order, however, to warrant the court in directing the conveyance of property belonging to one, to the other, there must be special circumstances and existing equities justifying the conveyance and such special circumstances and equities must be alleged in the complaint and established by the proof.' " No such special circumstances or existing equities appear in this case which would justify this court in overruling the decision of the trial court.

Defendant's evidence concerning the alleged cruelty of her husband concerned itself with several occasions prior to the separation of the parties. The trial court heard the testimony, saw and observed the witnesses on this issue.

Nothing in the record would indicate any error concerning his findings thereon. Where the chancellor sees the witnesses and listens to their testimony, his findings of fact will not be disturbed by the court unless they are manifestly against the weight of the evidence. *Evangeloff* v. *Evangeloff,* 403 Ill. 118; *Greer* v. *Carter Oil Co.* 373 Ill. 168; *Hadley* v. *White,* 367 Ill. 406.

We have purposely refrained from setting out unnecessarily the facts concerning plaintiff's charge of his wife's intemperance. The evidence is clear and we will not further consider that testimony, as it can have no possible public interest. It is enough to say that the evidence is sufficient to support the findings of the chancellor, who saw the witnesses and heard them testify. Under such circumstances this court will not disturb a finding of facts thus made. *Jones* v. *Jenkinson,* 316 Ill. 264; *Moneta* v. *Hoffman,* 249 Ill. 56; *Reinken* v. *Reinken,* 355 Ill. 539.

We do deem it necessary, however, to further consider the evidence and the law pertaining to the question of alimony, medical bills, and attorney fees. The parties were married almost 28 years. Three children were born as issue of this marriage, one of whom died in infancy; and in addition the defendant suffered two miscarriages due to accident. While the evidence may be conflicting as to the extent of the defendant's contribution to the wealth which the plaintiff has acquired, it is replete with facts which conclusively prove that she not only gave birth to and reared his children, but that she washed linens and made bus seat covers at home to fulfil the plaintiff's contract for such services with the Sherman Hotel and the Greyhound Bus Company, and that she assisted in other of the plaintiff's business ventures. Even though the defendant's evidence was not sufficient to sustain the cruelty charge of her counterclaim, it did establish that the plaintiff was not a model husband in their marital difficulties.

In the complaint filed in the case of *Fox* v. *Fox Valley*

*Trotting Club,* (8 Ill.2d 571, 572,) he valued the Exposition Park property at $1,500,000. This court will take judicial notice of its own records. (*People ex rel. Holzapple* v. *Ragen,* 2 Ill.2d 124, 130; *Lee* v. *Finley,* 413 Ill. 445, 447.) If we concede that plaintiff may have been exuberant in this estimation of worth, and if we make allowance for encumbrances and other liabilities, it appears from the evidence in this record, and from the decision in the *Fox Valley Trotting Club case,* that the plaintiff still has considerable wealth and attendant income. While the plaintiff has prospered, the ravages of time, intemperateness, childbirth, and hard labor, have taken their toll on the emotions and physical strength of the defendant. She is without funds.

The relief sought by defendant in her counterclaim included alimony. The plaintiff's complaint contained allegations that "plaintiff has always supported defendant according to his ability and is still ready and willing to pay what the court should deem necessary and proper for her support and care, taking into consideration her alcoholic habits," and the prayer for relief stated: "Plaintiff prays * * * (b) that the court find what it may deem proper and necessary for him to pay for support and care of defendant."

In *Adler* v. *Adler,* 373 Ill. 361, at page 369, this court stated: "Alimony is an allowance in a decree of divorce, carved out of the estate of the husband for the support of the wife. (*Adams* v. *Storey,* 135 Ill. 448; 19 Corpus Juris 201.) Generally, when a divorce is awarded a husband on the fault of the wife, the latter will not be awarded permanent alimony. (*Spitler* v. *Spitler,* 108 Ill. 120; *Boylan* v. *Boylan,* 349 id. 471.) The Divorce statute of this State has been construed to allow alimony to an erring wife, where all the facts and circumstances warrant the court in so doing; the objective, in the exercise of such right, is to prevent the imposition of an unjustifiable hard-

ship in a given case that would ensue if the general rule was applied."

Section 15 of the Divorce Act (Ill. Rev. Stat. 1955, chap. 40, par. 16,) authorizes the court to order the payment of such attorney fees and suit money as may seem just and equitable, regardless of the disposition of the case. This allowance may be to either the husband or wife, and the attorney fees may be for the prosecution or defense of the action. The defendant needed the services of an attorney in both the prosecution of her counterclaim and in her defense to the complaint.

We conclude that the decree of the lower court dismissing that part of defendant's counterclaim seeking alimony is contrary to the manifest weight of the evidence and the law, and that the lower court erred in not awarding the defendant alimony for her support, including the payment of her medical bills, and in not granting to her reasonable attorney fees. However, we find no error in the court's failure to find that a part or portion of the assets of the plaintiff are property of the defendant. Accordingly, we affirm the decree of the circuit court of Kane County in all respects except wherein it denied an award of alimony for the support of the defendant, including the payment of her medical bills and fees for her attorney. We reverse and remand the case to that court with directions to enter an award of alimony to the defendant in such amount as from the circumstances of the parties and the nature of the case may be reasonable and just, and to provide therein for the payment of her medical bills, and to order the plaintiff to pay a reasonable sum, as fees, to defendant's attorney.

*Affirmed in part and reversed in part and remanded, with directions.*