# DAVID L. HOUGH

*v.*

# WILLIAM HARVEY *et al.*

1. ADMINISTRATION—*right of executor to compensation for time and trouble in defending suits.* An executor being a trustee for the estate he represents, can receive no compensation for his time and trouble in organizing and working up a defense to a suit against the estate, or a claim for dower, nor can he receive compensation for professional services, as an attorney at law, in defending such suit.

2. SAME—*statute construed.* The section of the statute relating to executors and administrators, which, after allowing commissions, provides that they shall receive "such additional allowances for costs and charges in collecting and defending the claims of the estate, and disposing of the same, as shall be reasonable," means that the executor or administrator shall be allowed only for moneys and costs actually paid by him to others in the discharge of his duty, and not for his own services as agent or attorney of the estate.

3. TRUSTEE—*compensation.* A trustee can make no profit out of his office, for the reason that he shall not be placed in any position where his interest may be opposed to his duty. Hence the rule, that one occupying

the position of trustee can have no allowance or compensation for his time and trouble in the execution of the trust. This rule applies not only to trustees, strictly so called, but to all who hold a fiduciary relation, as, executors, administrators, mortgagees, receivers, guardians, and officers, directors and trustees of corporations.

4. INTEREST—*as against an executor—at what rate.* An executor, who was authorized by will to sell real estate and invest the proceeds for the benefit of the devisees, held moneys so obtained, without making any investment, and without rendering the annual account required by statute, for several years. It did not appear, however, that he had put the money out at interest, or that it was put to use in any trade or investment on his own account: *Held,* under the circumstances, the executor was chargeable with interest at the rate of six per cent only, with annual rests, or compounded.

5. Ten per cent interest per annum is not a rate which courts can allow in the absence of agreement.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Messrs. LAWRENCE, WINSTON, CAMPBELL & LAWRENCE, and Mr. D. L. HOUGH, for the appellant.

Mr. CHARLES HARVEY, and Mr. THOMAS S. BOWEN, for the appellees.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

Letters testamentary issued from the county court of La-Salle county, in 1855, to appellant, as executor of the last will and testament of Chester I. Harvey, who died that year. The will contained no provisions as to compensation of executor, and gave him authority to sell any or all real estate of the testator at public or private sale. and invest the proceeds for the benefit of his children, to whom he gave all his property. Appellant, failing to exhibit annual accounts of his administration, was, on petition of the beneficiaries under the will, cited in April, 1871, to appear in the county court and render an account of his administration. That was the commencement of this proceeding. An account having been ren-

dered and passed upon in the county court, appellant took an appeal to the circuit court, and from thence to this court, and although but two points of controversy arise, the record contains upwards of 175 pages.

It appears that the testator came to his death in consequence of a wound inflicted by a woman, who, after his death, claimed to be his lawful widow, and entitled to dower. For this purpose she brought suit, and appellant, as executor, made a defense. It being ascertained that she had a previous husband living, this suit was abandoned. Appellant was an attorney at law, and, in the county court, made a claim for compensation as such, for services in resisting this application for dower. In the circuit court, however, there was an attempt to change the theory of the claim and have it embrace services of that character, which a party himself, or a layman employed by him, as agent, might render in preparing a similar case for trial. The witnesses called to testify on behalf of appellant, as to the value of these services, seem to have been unable to exclude the idea that they were rendered by appellant as an attorney, as, in fact, they were. The elements of the estimate made by those familiar with what was done, evidently comprise his attendance upon the Bureau circuit court, where the dower case was pending, organizing a defense, and perseverance in endeavoring to procure evidence to sustain it. We were favored with an ingenious oral argument from one of appellant's counsel, also a full argument in print, in which it is insisted that appellant was entitled to be allowed what he claimed for these services, viz: $500. They place it upon the statute, as follows:

"Executors and administrators shall be allowed, as a compensation for their trouble, a sum not exceeding six per centum of the whole amount of personal estate, and not exceeding three per cent on the money arising from the sales or letting of land, with such additional allowances for costs and charges in collecting and defending the claims of the estate, and dis-

posing of the same, as shall be reasonable." Gross' Statutes (1869), p. 825.

After referring to certain language used by the court in the case of *Willard* v. *Bassett*, 27 Ill. 38, counsel say, "now, the services rendered in this case, for which the executor asks, and is clearly entitled to receive, an 'additional allowance,' are not professional services in the sense in which that term was used by this court, in the case cited." Then, after speaking of the character of the services, counsel proceed : "They consisted in services which it did not belong to an attorney to perform, and which were in nowise professional. They were such labors as a client must perform for himself, or pay an agent for performing. That agent may be the attorney ; but the work done would be outside of his retainer as attorney. These services consisted in making repeated journeys to ascertain most important facts, and in finding the witnesses by whom they could be proven."

It is by such refinements, in attempting to draw a distinction where none in reality exists, that wholesome principles are frequently undermined. One of these principles is, that a trustee can make no profit out of his office ; and the reason on which this principle rests is, that a trustee shall be placed in no position where his interest may be opposed to his duty. Hence the rule, that a trustee can have no allowance or compensation, according to the doctrine of equity, for his time and trouble in the execution of a trust, and this rule applies not only to trustees, strictly so called, but also to all who hold a fiduciary relation, as, executors and administrators, mortgagees, receivers, guardians, and officers, directors and trustees of corporations. Perry on Trusts, sec. 904, and cases in notes.

"If trustees," says the same author, "render services to the trust estate in their professional characters as solicitors, factors, brokers, bankers, *or in any other capacity*, they can receive no compensation or commissions for such services." Ib. sec. 904.

The very ground-work of counsels' argument in favor of a distinction between the character of these services and those which are purely professional is, that they were such services as might be required to be performed by a party himself, or an agent, and though the agent might be an attorney, he need not necessarily be one. The services, they say, consisted in making repeated journeys to ascertain most important facts, and in finding the witnesses by whom they could be proven. It would have been within the powers and duty of the trustee to have employed an agent to make these repeated journeys. Then, his true position of trustee would have required him to exercise a reasonable degree of care and vigilance in seeing that the journeys were necessary; that they were not unnecessarily repeated or extended. But when he assumes to perform them himself, he occupies an entirely different position; he thereby places himself in one, where his interest may be opposed to his duty. If he have little to do and desires profitable occupation, and can call upon the estate to compensate him for his time and trouble, it would be against his own interest to restrict these journeys as to number or extent. This doctrine once established, and we should soon find executors and other trustees making the tour of Europe at the expense of the estate they represent, on the pretext of necessary business of such estate. The principle which forbids compensation to an executor or other trustee, for professional services, as attorney or solicitor, forbids it also for making repeated journeys to ascertain important facts, and in finding witnesses by whom they could be proven. The reason of the rule against the allowance is just as applicable to the one case as the other. For it is clear that, if a claim of the nature in question is allowable, the right itself to compensation could not be justly made to depend upon the success of the journeys. So that, opening the door to the allowance of such claims, would admit of even greater abuses than those for professional services, because the means of detecting abuses would be far less.

It is the opinion of a majority of the court that the statute

above quoted, was intended to modify the rules of equity only to the extent of allowing to executors and administrators compensation for their trouble, only, in the mode and within the limit prescribed, and that the last clause was intended to be in harmony with those rules, and authorize an allowance in respect to collecting and defending claims in favor or against the estate, for "money out of pocket," and that is what is meant by the words "costs and charges." It never could have been the intention of the law-making power to furnish a motive for executors and administrators to embark in litigation on behalf of the estate. For, if they are to be allowed compensation for their time and trouble in ascertaining facts and finding witnesses by whom they could be proven, they might find pretexts to keep themselves in constant employment at the expense of the estate.

We have no doubt but the services in this case were rendered as claimed, and were highly beneficial to the estate. But however that may be, to sanction the claim would be not only to set a bad precedent, but violate an established and salutary rule of law.

The only other point involved relates to the rate of interest. Upon a balance arising from a sale of real estate, amounting February 22, 1867, to $2023.33, the court below charged appellant with interest from that date to May 23, same year, at the rate of ten per cent per annum ; then, deducting a credit of $47.70, charged him with the same rate of interest on the balance down to July 21, 1873, the time of entering the decree.

There is no pretense that appellant put the money out upon interest and received that rate, or that it was put to use in any trade or investment of appellant. By the terms of the will, appellant was authorized to sell any real estate belonging to the testator at his death, and invest the proceeds for the benefit of the devisees, and, by the statute, he was required to render annual accounts to the county court. He rendered none after 1863, and failed to invest the proceeds of the sale

of land.    Under these circumstances, he was chargeable with interest at the legal rate, simple or compound.  *Sellick* v. *French*, 1 Am. Lead. Cases, 364, and cases there cited. But ten per cent per annum is not a rate which courts can allow in the absence of agreement.  *Bond et ux.* v. *Lockwood*, 33 Ill. 222.    Interest at the rate of six per cent should have been allowed, with annual rests, or compounded.    The rate of ten per cent per annum amounted to several hundred dollars more than compound interest would, and its allowance was against the express ruling of this court in the case referred to.

For this error, the decree of the court below will be reversed, and the cause remanded, with directions to modify the decree in the respect indicated.

*Decree reversed.*