(No. 19982.—

THE PEOPLE, for use, etc., Defendant in Error, *vs.* ARTHUR T. BIRKET, SR., *et al.*—(THE DETROIT FIDELITY AND SURETY COMPANY, Plaintiff in Error.)

*Opinion filed December 18, 1930—Rehearing denied Feb. 4, 1931.*

GEORGE W. HUNT, and J. EDWARD RADLEY, for plaintiff in error.

HUNTER, KAVANAGH & McLAUGHLIN, for defendant in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

Defendant in error, the People of the State of Illinois, for the use of the Dime Savings and Trust Company, as conservator of the estate of Katie R. Birket, insane, began suit in the circuit court of Peoria county in an action of debt upon the bond of Arthur T. Birket, Sr., as conservator of the estate of Katie R. Birket, insane, on which bond the Detroit Fidelity and Surety Company was surety. Birket was defaulted, the surety company filed the general issue and a special plea, there was a hearing before the court without a jury, judgment was rendered in favor of defendant in error for $7500, an appeal was prosecuted to the Appellate Court for the Second District, where the judgment was affirmed, and the case comes to this court upon a writ of *certiorari*.

All of the facts were stipulated, as follows: Several years prior to 1922 Katie R. Birket was adjudged insane. On February 27, 1922, the probate court of Peoria county appointed Arthur T. Birket, Sr., as her conservator and he qualified and gave bond. On December 23, 1924, he was ordered to give a new bond and a new bond was filed and approved, with the Detroit Fidelity and Surety Company as surety. In January, 1927, the surety filed a petition for an order on the conservator to make a full and complete

report from February 27, 1923, to January 31, 1927. The conservator failed to make this report. On February 2, 1927, he was removed and the Dime Savings and Trust Company was appointed conservator and qualified and brought suit on the bond. The bond filed by Birket on December 23, 1924, was conditioned that the surety was not to be held liable for any acts of the conservator prior to November 20, 1924, and it contained other conditions with reference to accounting, performance of duties, and other recitals not necessary to be stated. At the time this new bond was given there was on file and unapproved in the probate court of Peoria county a report of the conservator from February 27, 1923, to February 27, 1924, in which he charged himself with "balance carried last report" $1583, amount received during the year $4580, making a total debit of $6163. He asked credit for $2210.69 paid out, leaving a "balance due" of $3952.31. This report was never approved and after its date the conservator filed no other reports. It was stipulated that the report was correct as to receipts and expenditures, except that the balance of $1583 on hand at the date of the prior report and $3952.31 on hand at the date of this report were not in the hands of the conservator in cash or on deposit to the account of his ward; that at some time prior to November 20, 1924, the sums shown as cash balances carried forward and balance due, as well as the balance due on November 20, 1924, were not held by the conservator in a separate account but they had been used by him for his own use, all of which was unknown to the surety company unless it was bound to know the same before the execution and delivery of the bond in question. It was agreed that the receipts from November 20, 1924, to February 27, 1925, should be considered as equal to one-third of the annual receipts, or $533.33; that since the filing of the last account the conservator had furnished to the parties schedules of his receipts and disbursements from February 27, 1924, to Feb-

ruary 27, 1925, showing "amount carried forward from last report" $3952.31, receipts during that period $1600, making a total received of $5552.31, with expenditures of $1556.77, leaving a "balance due" of $3995.54; that the conservator filed with the parties his report of receipts and expenditures from February 27, 1925, to February 27, 1926, showing a balance "carried forward last report" of $4995.54, with receipts of $1624, making a total charge of $5619.54; that he paid out $834.25, leaving a "balance due" of $4785.29; that the conservator' furnished to the parties a schedule of receipts and expenditures from February 27, 1926, to January 31, 1927, showing "amount carried forward last report" of $4785.29, receipts of $1507, making total receipts of $6292.29, with expenditures of $1347.49, leaving a "balance due" of $4944.80; that the items of receipts and expenditures as stated in these various reports are true and correct, except that the balances carried forward and the balances stated to be due at the end of each account were not in the hands of the conservator on the dates the accounts were rendered and that no report thereof was ever filed in or approved by the court. It was further stipulated that there had never been an order of court approving the conservator's fees or commissions in the schedule first set out, but that in former years, from the date of his appointment to February 27, 1923, the conservator was allowed $300 per year for his services and for each year thereafter; that this sum was reasonable and should be allowed, unless by reason of his defalcation the court determined, as a matter of law, that the surety company should not take credit therefor; that a demand was made upon Birket by the Dime Savings and Trust Company to make an account and to pay over any balance due, but the conservator made no report and did not turn over any money; that the present conservator and the surety company have made examinations of the receipts and disbursements of Birket and the

same are in amount as reported in the foregoing schedules, but it is not admitted by the present conservator that the disbursements were lawfully paid out as to the items of $300 enumerated each year as commission of the conservator; that the schedules do not show a charge of interest on annual balances, which question is to be considered by the court and if found to be a proper charge against the surety company then such annual balances as the court may find due shall bear interest at five per cent from the date of such annual balance to the date of entering the judgment herein.

Four breaches are assigned in the declaration, as follows: (1) That Birket did not render true and correct accounts to the probate court; (2) that he did not, as ordered by the court, settle his accounts upon his removal as conservator; (3) that he wholly failed, neglected and refused to pay over the money and property of his ward in his hands on such settlement; and (4) that after he qualified under his last bond divers rents accrued from the real estate of the ward amounting to $7500, that they came into the hands of Birket prior to the date of his removal, and that during that time he converted these rents to his own use and has neglected and refused to pay over the same.

The plea alleged that it was a condition of the bond that the surety was not to be held liable in any form for any acts of the conservator prior to November 20, 1924; that at the time of its approval a current report of Birket was on file in said court and unapproved, which report showed a balance for the year ending February 27, 1923, of $1583 to be cash on hand; that the conservator made no account after February, 1924, and prior to the execution of the bond; that at the time the bond was executed there was, in fact, no money, cash, checks, or the equivalent thereof, in the hands of the conservator, but all money received prior to the execution of the bond had been disbursed and paid out or used by the conservator for his own use.

The trial court held that plaintiff in error was liable for $4371.59 converted by Birket prior to the execution of his bond, for $1753.21 converted by him after the execution of his bond, and that it was liable for interest on annual balances amounting to $1375.20.

The first question is whether or not the surety company was liable for the balance admitted by Birket to be due prior to the date of the giving of the last bond. The surety company claims that it was not liable under the conditions of the bond because the funds had been appropriated by the conservator to his own use prior to the date the bond was given. The conservator had not been ordered by the court to file an account. There is no evidence that any demand was ever made upon him to pay the money prior to December 23, 1924. He voluntarily filed an account, in which he charged himself with these funds. The surety company had knowledge of the existence of this report and that in it the conservator admitted that the balance on hand was due to his ward. There had been no hearing or finding on that report. There is no stipulation and there is no evidence in the record that the conservator is insolvent now or was at any time during these proceedings. Prior to the date he might be ordered to file an account or to make a settlement he could have replaced any money used by him and he would not have been in default. If he had been ordered to account and was unable to produce the money, then for the first time he would have been in default. In *Fogarty* v. *Ream,* 100 Ill. 366, the surety on a guardian's bond filed a bill in equity to have certain reports of the guardian set aside as fraudulent as against the surety because they showed that the guardian charged himself with a balance on hand, while, as a matter of fact, he did not have such funds and was insolvent. This court on page 377 said: "Had it appeared Lynch still had the trust funds on hand, or other funds with which to replace the same, when complainant became his surety on his official bond, his lia-

bility for any waste of such funds thereafter would not be contested. It is sought, however, to prove the guardian did not have in his possession or control the trust funds at the time complainant became his surety but had previously wasted the same, and was then, and has ever since continued to be, insolvent. This the policy of the law will not permit him to do so. It would open a wide door for fraud in such matters. Here the guardian elects to charge himself with the full amount of a claim in his favor for funds belonging to his ward. It is neither a false nor a fictitious claim. The money is absolutely due from the guardian to his ward, and neither the guardian nor his surety will be permitted to deny he has the money admitted to be in his hands. Any other rule would be a most unsafe one and would lead to results the law will not tolerate." It has been held where a public officer succeeds himself in office his bondsmen on his second bond are liable for the amount on hand at the termination of his first term, and that the obligation of his first bond is not prolonged by a re-election of the principal to office, and that where a county treasurer, upon coming into office, charges himself with a sum of money upon his books as received from his predecessor, both he and his surety, when sued on his bond, will thereby be concluded from denying that fact and from showing that such sum was not paid to him by his predecessor. *Morley* v. *Town of Metamora,* 78 Ill. 394; *Roper* v. *Sangamon Lodge,* 91 id. 518; *City of Chicago* v. *Gage,* 95 id. 593; *Cawley* v. *People,* 95 id. 249; *Longan* v. *Taylor,* 130 id. 412; *Doll* v. *People,* 145 id. 253.

Paragraph 18 of chapter 103 of our statutes (Smith's Stat. 1929, p. 1979,) provides that whenever any surety on the bond of a conservator of an insane person desires to be relieved from further liability on such bond he may petition the court in which such bond is filed, and, upon notice being given to such conservator in such manner as the court may direct, the court may compel such conservator, within

a reasonable time, to appear and settle his accounts and file a new bond to be approved by the court, which being done, the surety may be discharged of his liability on said bond. Plaintiff in error insists that this statute is not for the protection of a surety on a new bond but is merely for the purpose of relieving the surety on the old bond. Even if this is true, if steps had been taken under this statute for an accounting, the surety on the new bond would have known exactly the state of the account of the conservator and there could be no question as to the exact condition of the account. No such action was taken. The surety relied upon the condition in the bond that it should not be liable for acts prior to November 20, 1924, and relied upon the truthfulness of the report then on file. There is no evidence of the insolvency of the conservator now or at any other time, no order was entered by the court for him to account prior to the filing of this bond, no demand was made upon him for the funds prior to the giving of this bond, he filed a report acknowledging a balance due his ward, the surety company had knowledge of this report and its contents, and it was liable for the balance due at the time the bond was filed.

Plaintiff in error insists that the court improperly allowed interest on yearly balances shown by the accounts to be due. Section 18 of chapter 86 of our statutes provides that a conservator shall be chargeable with interest upon any money which he shall wrongfully or negligently allow to remain in his hands uninvested after the same might have been invested. In *Hough* v. *Harvey,* 71 Ill. 72, *Peterman* v. *United States Rubber Co.* 221 id. 581, and 2 Schouler on Wills, Executors and Administrators, sec. 1538, it is said that executors are liable for interest on funds allowed to remain in their hands uninvested after the same might have been invested.

Plaintiff in error insists that the amounts of the annual balances shown are small and were not such sums as ought

to have been loaned and on which the conservator should be charged with interest; that out of these balances, interest, taxes and repairs were to be paid, and the balance should have been applied to the benefit of the estate. The various accounts show $3952.31, $3995.54, $4785.29 and $4944.80 on hand at various times from February, 1923, to January, 1927. On these amounts the ward received no interest but the conservator had the benefit of this money. Some of the accounts show that interest and taxes had been paid, and if there were other purposes for which the money should have been used the evidence does not show what those purposes were or that the money was used for those purposes.

Plaintiff in error, in support of its contention that interest should not be charged, relies upon section 2 of chapter 74 of our statutes and cites certain cases in support of its contention. These are not cases of conservator and ward, where a statute charging interest is involved.

Plaintiff in error insists that it is not accountable for interest because no accounting was made and it is impossible to determine at what time this money came into the hands of the conservator and might have been invested. It is stipulated that if interest is to be charged it shall be at the rate of five per cent on annual balances, and plaintiff in error cannot be heard to question the sufficiency of the proof as to the time from which interest should be computed. Under the statute the conservator was liable for interest.

Complaint is made of certain propositions of law held and refused by the court. All of these propositions, however, are in substantial compliance with the views herein expressed and no error was committed in any rulings thereon.

We find no reversible error, and the judgment is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*