Harry E. Otey et al., Appellees, v. Austin I. Westerman and United States Fidelity and Guaranty Company, Appellees, and Aetna Casualty and Surety Company, Appellant.

396

·filed June 4, 1934.  Rehearing denied August 27, 1934.

McCarty & Arnold, for appellant.

Parker & Eagleton, for appellees Harry E. Otey et al.

O. L. Plunkett, for appellees Trustees of Schools.

Cooper, Royse, Gambill & Crawford, Samuel M. Scholfield and Carson M. Purdunn, for appellee United States Fidelity & Guaranty Co.

Mr. Presiding Justice Edwards delivered the opinion of the court.

This proceeding originated in the circuit court of Crawford county, upon a bill filed by Harry E. Otey and others, sureties upon the official bond of Austin I. Westerman, treasurer of School Township Number 7, North, Range 12, West, in Crawford county, for an accounting of the amount of liability of Westerman, as such township treasurer, growing out of his defalcations in such official capacity, to adjudge the amount which the solvent sureties should pay, and to decree that any amount adjudicated against Westerman, under his additional official bond, be paid by Aetna Casualty and Surety Company, which had executed a bond of indemnity, in favor of the complainants, together with costs, and attorney's fees.

All sureties upon Westerman's several bonds were made defendants, as were also the trustees of schools of such township. The several defendants, with two exceptions, who were defaulted, answered the bill, setting forth their various contentions as to liability. In addition, the trustees of schools filed their cross-bill, charging that a part of the defalcations occurred when defendant, United States Fidelity and Guaranty Company, was the only surety on the bond, and that a part took place when both such bond and that of Otey and

others were in effect, asking that an account be taken, and the respective liabilities of the several bondsmen be determined, to which cross-bill answers were filed, a hearing was had before the chancellor, who, for reasons to be hereafter discussed, dismissed the bill and cross-bill, as to the defendant, United States Fidelity and Guaranty Company; decreed that Westerman, as principal, and Otey and the other sureties, were liable under their bond of June 30, 1931, for the amount of $16,889.31, and costs; that Westerman, and one of the sureties named, Lindsay, were insolvent; that as a consequence, the full amount of the sum so adjudged be paid by Otey and his solvent cosureties, and further that appellant, Aetna Casualty and Surety Company, be held under the reindemnifying bond, for the amount so found to be due, for the use of the trustees of schools, and also found the sum of $350 to be a reasonable attorney's fee for complainants, and ordered same paid by said Aetna Casualty and Surety Company. From this decree, only the latter has appealed.

Most of the facts are not disputed, and the contentions arise out of the legal effects of certain acts of the parties hereto, and the interpretation to be placed upon their conduct. It appears from the evidence that Westerman, who had been township treasurer since 1924, was, in 1926, re-elected for a term of two years, and gave bond therefor in the sum of $100,000, with defendant, United States Fidelity and Guaranty Company, as surety; that on July 7, 1928, he was again re-elected as such treasurer for a term of two years, and gave a new bond in the sum of $100,000, with the same surety thereon.

On July 1, 1929, it appears that the school trustees made an order re-electing Westerman as treasurer for two years, the term to expire July 1, 1931. It seems to be conceded by all parties to this suit that there was no legal authority for this action of the trustees, and

that such purported re-election of Westerman was void.

July 1, 1930, Westerman, as principal, with the United States Fidelity and Guaranty Company, entered into bond as such township treasurer in the sum of $100,000, which obligation was approved by the trustees of schools July 14, 1930. The minutes of the school trustees showed an entry, to wit: "The new bond of A. I. Westerman, Treasurer, for $100,000.00 was approved and filed."

It further appears that on June 23, 1931, United States Fidelity and Guaranty Company served notice upon Westerman that it desired to be released from liability on account of said bond of $100,000, executed in 1928, and caused to be delivered to the president of the board of trustees, an affidavit showing this service.

Later, on June 30, 1931, the trustees at a meeting took action as evidenced by the following entry on their records: "The purpose of meeting, appointment of Treasurer for term of two years. A. I. Westerman was appointed for term of two years beginning July 1, 1931, ending July 1, 1933," and on the same day, complainants, Otey and others, entered into bond as sureties for Westerman, in the sum of $250,000, which, on July 8, 1931, was approved by the trustees, and filed with and approved by the county superintendent of schools.

Under date of July 13, 1931, a reindemnifying bond in the sum of $50,000 was given by Westerman, as principal, with defendant, Aetna Casualty and Surety Company, as surety, to reindemnify Otey and his co-sureties, for liability upon the $250,000 bond.

In the summer of 1932, an audit of Westerman's accounts, as school treasurer, disclosed a shortage, and on December 27, 1932, he was removed from office by the trustees, and James T. Athey appointed in his

stead, qualified as such treasurer, and in the January following, this suit was instituted.

The court found, as the proof shows, that between July 1, 1927, and July 1, 1931, the defalcations of Westerman amounted to the sum of $14,541.42, while between July 1, 1931, and July 23, 1932, he embezzled $2,347.89, or a total shortage during his several terms as township treasurer of $16,889.31.

One of the controverted questions in the case is whether Westerman was, on July 1, 1930, re-elected as such treasurer, for a term of two years. It is the contention of all the parties, except the United States Fidelity and Guaranty Company, that such is the fact, while the latter urges that he was not re-elected at said time, and merely held over until July 1, 1931, when he was re-elected for the unexpired portion of the term beginning July 1, 1930, and which would end July 1, 1932.

Section 67 of chapter 122, Cahill's Revised Statutes, ¶ 67, provides that the trustees of schools shall elect a treasurer who shall be *ex officio* clerk of the board, and whose term shall be for two years, beginning and ending on the first day of July.

Section 265 of said chapter 122, Cahill's St. ¶ 389, states that "All school officers elected in pursuance of any general law now in force shall hold their respective offices until their successors are elected and qualified under the provisions of this Act." These enactments were in force at the time Westerman was re-elected as township treasurer in July, 1928.

The effect of these two sections is to establish the rule that the treasurer elected in 1928 held his office for two years up to July 1, 1930, and thereafter until his successor should have been elected and qualified.

The minutes of records of the trustees of schools, dated July 14, 1930, set forth that the annual report of the treasurer was presented and approved; that certain amounts, designating them, were placed to the

credit of the several districts from the distributive funds, and one amount withheld therefrom, and that "the new bond of A. I. Westerman, Treasurer, for $100,000.00 was approved and filed," and there being no further business, the board adjourned.

It will be observed that the minutes of said meeting nowhere recite that Westerman was re-elected as treasurer. One of the trustees testified, over objection, that at such meeting, Westerman was re-elected treasurer for a two-year term. However, there is nothing of record to establish the fact.

Said section 67 of chapter 122, Cahill's Revised Statutes, ¶ 67, among other things, provides that the treasurer shall be *ex officio* clerk of the board of trustees; that it shall be his duty to attend all meetings and keep a record of the official proceedings of the trustees, such record to be open to the inspection of any persons interested, and that all proceedings, when recorded, shall be signed by the president and clerk.

The statute thus requires all the official acts of the school trustees to be recorded and attested by the president and clerk, one of which acts of the trustees, as required by said section 67, being the election of a treasurer; hence, the official act of such election must be duly recorded, according to the terms of said section.

The law pertaining to the proof of official acts and proceedings which are required to be made a matter of record is well settled in this State. In *People v. Board of Supervisors of Madison County,* 125 Ill. 334, at page 342, in speaking of the evidence of the proceedings of a board of highway commissioners, the court said: "It seems clear that the same rules of law are to be applied to this corporate body in respect of its corporate action, and the evidence of such action, as are applied to other municipal corporations, and that the record of its action required by law to be made

and kept, becomes the best, and if in existence and capable of being produced, the only evidence thereof.''

In *City of Belleville v. Miller,* 257 Ill. 244, at page 246, where the court had under consideration the matter of the manner of proof as to what had taken place at a meeting of the, board of local improvements, it stated the rule to be, ''Where the law requires public records of proceedings to be kept, as it requires in this case, the records of the board of local improvements to be kept, such records cannot be contradicted, added to nor supplemented by parol evidence.''

It is manifest from the authorities cited that the records of proceedings of the trustees of schools is the only manner in which their official actions can be proven, and particularly where, as in this case, they are in existence, and capable of being, and in fact, were produced. Hence, it is evident that the oral testimony of one of the trustees to the effect that at the meeting of July 14, 1930, Westerman was re-elected treasurer, for a term of two years, was not competent proof of such fact.

Moreover, the failure of the record to affirmatively show that such election took place at said meeting, is, of itself, evidence that no such election occurred. In *People v. Toledo, St. L. & W. R. Co.,* 270 Ill. 472, at page 473, where the question was whether a board of commissioners of highways had held a meeting, the court in considering and discussing the question said: ''The appellant contends that a record of the proceedings by the, Commissioners was required to be kept, and that failure of the record to show the meeting required by law is proof that no such meeting was held. If the Commissioners were required to keep a record of their proceedings there is no doubt that their action could be proved by the record alone, and the failure of the record to show any action would be evidence that no such action was had.'' The law requiring that a record of the treasurer's election be kept and had,

and the minutes not showing such election, is, of itself, evidence that the treasurer was not re-elected at such time.

Upon this record, it appears not only that there is no competent evidence that Westerman was re-elected treasurer on July 14, 1930, but, on the contrary, there is evidence that he was not so re-elected.

We think it clear that Westerman has not been proved to have been re-elected upon said date, and that he thereafter was holding over, under the election of 1928, and continued so to hold until June 30, 1931, when the record shows the trustees re-elected him, as they supposed for a term of two years, but which could only be for the unexpired portion of the two-year term which should have begun July 1, 1930. 46 Corpus Juris, 976, sec. 127; *Donovan v. State Board of Labor,* 225 Mass. 410, 114 N. E. 679; *Wilson v. Shaw,* 194 Iowa 28, 188 N. W. 940; *State v. Galusha,* 74 Neb. 188, 104 N. W. 197.

It follows that whether the bond of the United States Fidelity and Guaranty Company, dated July 1, 1930, for $100,000, be held to be in lieu of the one for like amount, furnished in 1928, or whether it was cumulative thereto, the United States Fidelity and Guaranty Company was liable for the defaults of Westerman up and until July 8, 1931, when the bond for $250,000, given by Otey and others, was approved, whereupon its responsibility, as such surety ceased, and it was not thereafter answerable for any defalcations of the treasurer. Cahill's St. ch. 122, ¶ 389; 46 C. J. 1072, sec. 408.

If, however, the theory be adopted that the United States Fidelity and Guaranty Company, by service of its notice of June 23, 1931, evidencing its desire to be relieved of liability under the bond for $100,000, given in 1928, was absolved from further liability 10 days thereafter, as provided by section 10 it could make no difference in the decision of the case, for the reason

that 10 days from June 23rd would carry it to July 3rd, and the evidence shows that no defalcations occurred between July 3, 1931, and July 8, 1931, when the $250,000 bond was given and approved; hence, it would be holden under its 1928 bond, at least until July 3, 1931, and the effect of giving the 1930 bond, or its legal status, would be immaterial.

It is thus evident that the United States Fidelity and Guaranty Company, in any event, is, under its bond of 1928, and those given for the preceding terms of Westerman's incumbency as township treasurer, liable for any defalcation of which he might be guilty occurring before July 3, 1931 (Cahill's St. ch. 122, ¶ 389; 46 C. J. 1072, sec. 408), unless it had in some manner been legally discharged therefrom, or an estoppel had arisen in its favor, as it contends is the case.

On page 50 of its brief and argument, the United States Fidelity and Guaranty Company states its claim to an estoppel as follows: "Under the law of Illinois, it is universally held that where a public officer, at the end of his term, makes a report showing he has on hand all of the public funds for which he is liable to account, which report is accepted and approved by the proper authorities, and the officer is reelected and executes a new bond, the officer and the sureties on the last bond are estopped to say that the sums shown in the report of the officer to be in his hands at the time the report was approved, were not actually in his hands"; that such is the law appears to be established by the authorities. *Cowden v. Trustees of Schools,* 235 Ill. 604; *Longan v. Taylor,* 130 Ill. 412; *Morley v. Town of Metamore,* 78 Ill. 394.

On page 51, the application of the rule to the instant case is stated to be "The evidence shows that on July 8, 1931, at the first meeting following the reappointment of Westerman as School Treasurer on June 30, 1931, the defendant Westerman presented his annual

report to the Trustees of Schools, which showed that he had on hand all sums for which he was then accountable, and that such report was approved.'' If this be a correct recital of the facts, it is, within the rule as stated, an estoppel in favor of the United States Fidelity and Guaranty Company, as against the surety on the $250,000 bond, approved July 8, 1931, as well as the surety on the $50,000 reindemnifying obligation.

In order to determine this contention, it is necessary to discuss both the evidence bearing upon the point, and the statutes in force at the time of the transaction.

The matter of reports on the part of the school trustees and the township treasurer is regulated by sections of the School Law. By section 36 of the Act, Cahill's St. ch. 122, ¶ 36, the trustees are required to prepare or cause to be prepared by the treasurer, a statement of the condition of the schools, on or before July 15th annually, and file same with the county superintendent of schools. Section 77, Cahill's St. ch. 122, ¶ 77, commands the treasurer to deliver to the county superintendent, on or before June 30th annually, a statement showing the ''exact condition of the township funds,'' to be verified by affidavit of the treasurer. In section 79, Cahill's St. ch. 122, ¶ 79, is a requirement that the treasurer present to the trustees, at their meeting following the annual election, a complete exhibit of the fiscal affairs of the township and of the several school districts.

By section 78, Cahill's St. ch. 122, ¶ 78, the treasurer was also required to submit a report to the trustees on the first Mondays of April and October, showing the financial assets and income of the township, also submit for their examination, all books, papers, notes, etc., which he held in his official capacity.

It appears from the proof that each year, during his incumbency, Westerman prepared, evidently at the direction of the trustees, their annual statement, which

he caused to be filed with the county superintendent. Each of these, on its face, purports to be the act of the trustees, and does not assume to be a report of the treasurer. They are unverified, whereas the report of the treasurer was required to be supported by his affidavit. It is manifest that they were the reports of the trustees, contemplated by said section 36, and not those of the treasurer as required by section 77.

It appears from the records of the trustees' meetings, that Westerman presented his reports to the trustees from time to time, and that same were approved, but with the exception of the semiannual report of April 8, 1929, not one is recorded as showing any definite amount of funds in the treasurer's hands. The reports themselves were not offered in evidence, and the minutes of the proceedings of the trustees' meeting were the only testimony in the case bearing upon the proposition.

As previously observed, the United States Fidelity and Guaranty Company claims that at the trustees' meeting of July 8, 1931, the treasurer's report was presented and approved; that same showed in his hands all school funds, for which he was accountable.

The minutes of such meeting were as follows: "Trustees met in regular meeting. Report of A. I. Westerman Treasurer ending July 30, 1931 was presented and approved. The bond of A. I. Westerman as Treasurer in the sum of $250,000.00 was presented and approved and filed with County Superintendent. No further business, board adjourned."

That the treasurer filed his report, and that same was approved, is thus established by the record. However, it nowhere appears that he, at the time, had on hand all the public funds with which he was chargeable, nor does it show that he then held any certain or definite amount of such moneys. For aught that is disclosed by the minutes, the report might have shown that he held in hand but a small amount of public

money, or perhaps no funds at all. The contents of the report, and what it would have revealed as to the state of finances in the treasurer's hands, are not known, nor do the minutes purport to state that the board of trustees found the treasurer in possession of all funds which should have been in his hands. They merely approved his report, whatever it might have been, and whatever it might have disclosed.

We have no evidence of the contents of the report, and cannot know whether or not he was reporting, as in his hands, all funds with which he was chargeable.

One of the requirements of the rule invoked is that the report shall disclose the officer held, in official possession, a certain amount of money, and that such was the total sum for which he was accountable (*Cowden v. Trustees of Schools, supra*). This necessary element is entirely lacking upon this record, which impels us to the opinion that the sureties upon the $250,000 bond given by Otey and others, July 8, 1931, and the Aetna Casualty and Surety Company, surety upon the $50,000 reindemnifying obligation, are not estopped to assert that Westerman did not have on hand at such time the full amount of school funds which properly should be in his hands, as such treasurer.

The total amount of Westerman's defalcations, as such school treasurer, was $16,889.31, of which $14,541.42 was embezzled by him prior to July 3, 1931, and during the time the bonds of the United States Fidelity and Guaranty Company were in force and effect, and the balance, or $2,347.89, he wrongfully converted after the bond of Otey and cosureties had been approved July 8, 1931, and the reindemnifying obligation of the Aetna Casualty and Surety Company had been executed.

It is our conclusion that Westerman and the United States Fidelity and Guaranty Company are liable on their several surety bonds for the defalcations amount-

ing to said sum of $14,541.42; that Westerman, Otey and the other sureties on the $250,000 bond of July 8, 1931, are holden for the remaining conversions in the amount of $2,347.89, but that John H. Lindsay, one of such sureties, being insolvent, said amount be apportioned among the remaining sureties, and that the latter are entitled to be reimbursed from appellant, Aetna Casualty and Guaranty Company in said amount, together with costs and $350 attorney's fees, as found by the trial court.

The decree is reversed and the cause is remanded with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded with directions.*