Trustees of Schools, Township 36, North, Range 10 East of Third P. M., Will County, Illinois, Appellees, v. American Surety Company of New York et al., Appellants.

Gen. No. 9,354.

Opinion filed April 6, 1940. Rehearing dismissed December 20, 1940.

Edward R. Nadelhoffer, of Joliet, for certain appellants.

Adams, Hawxhurst, Hawley & White, of Chicago, for certain other appellant; Ralph R. Hawxhurst and Homer C. Dawson, of Chicago, of counsel.

Snapp, Heise & Snapp, of Joliet, for appellees; William Martin Garvey, of Lockport, of counsel.

Mr. Justice Dove delivered the opinion of the court.

Carl H. Muehlenpfordt was appointed school treasurer in June, 1912 for a term of two years by the Trustees of Schools of Township 36 North, Range 10 East of the 3rd P. M. in Will County, Illinois and was reappointed to succeed himself every two years thereafter to and including June, 1932. After each appointment he qualified as such treasurer and with the exception of 1932 executed the required statutory bond with the American Surety Company as surety. Following his reappointment in June, 1932, he executed a bond upon which the names of Philip Yost and Edward T. Winkler appear as sureties. This bond is in the penal sum of $125,000, as were all the bonds executed after 1914 and all the bonds appear to have been duly executed and approved as provided by law. At the time of his appointment Carl Muehlenpfordt, the treasurer, was connected with the First National Bank of Lockport and had been its president for many years and he there kept his treasurer records and carried his school account in that bank. He embezzled the school funds and when his misappropriations were detected by a bank examiner, he committed suicide on April 22, 1933. While treasurer he made annual reports to the trustees and to the county superintendent of schools each year as provided by law. His last annual report is dated June 30, 1932 and showed a balance of cash

on hand at that time of $117,910.78. His books disclosed that on April 1, 1933, he had on hand as treasurer a cash balance of $29,936.58, but he did not have this amount or any cash on hand as treasurer when he died and no money was ever turned over to his successor, Aloysius P. Dailey, who was appointed treasurer immediately after Mr. Muehlenpfordt's death.

On September 5, 1933, the original bill in this cause was filed by the Trustees against the American Surety Company of New York, Philip Yost and Edward T. Winkler, individually and as administrators of the estate of Carl H. Muehlenpfordt, deceased. The relief sought was an accounting and a determination of the liability of the several defendants upon these bonds executed by Carl H. Muehlenpfordt as township school treasurer. On March 1, 1934, leave was granted the plaintiffs to file an amended complaint and an order was entered that thereafter the pleadings and proceedings should be governed by the Civil Practice Act. An amended complaint was filed, the several defendants answered and after the issues had been made up, the cause was heard in open court by the chancellor, who entered an interlocutory decree making certain findings of fact and referring the cause to the master in chancery to state an account and particularly directing him to determine the amount of the liability of the several defendants. From this decree the several defendants have appealed.

The amended complaint was filed on March 6, 1934, and in the thirteenth paragraph thereof the reappointment of Muehlenpfordt as treasurer in 1932 was alleged, and it was averred that he, as principal, and Philip Yost and Edward T. Winkler, as sureties, executed their joint and several bond as required by law on July 1, 1932 in the sum of $125,000, which was duly acknowledged, approved and accepted by the plaintiffs and a copy thereof was attached to the complaint. By

their original joint answer filed September 12, 1935, the defendants Yost and Winkler denied generally most of the allegations of the amended complaint and as to paragraph 13 stated that ''they did not have before them any copy of said alleged bond and were unable to remember what its terms and conditions were, if any, and do not admit the same to be true as in the petition alleged.'' Subsequently and on November 22, 1935, these defendants filed a verified amendment to their answer, in which for the first time they denied executing the bond dated July 1, 1932. Upon the hearing each testified positively that he did not sign the bond and did not know until after Muehlenpfordt's death that his name appeared thereon as surety. Mr. Yost testified that he and his daughter, on June 30, 1932, left their home in Illinois for Willow Lake, Minnesota, and remained there until July 28, 1932. The daughter corroborated her father's testimony. The notary public, whose name and seal appear upon this bond in the certificate of acknowledgment testified that he was an employee of Muehlenpfordt's bank in June and July, 1932, that he had frequently seen Yost and Winkler's signatures, that the signatures on this bond looked like theirs, appeared to him to be theirs and that his genuine signature and notarial seal appeared in the certificate of acknowledgment. This witness could not recall when or whether Yost or Winkler appeared before him and acknowledged their signatures to the bond and he did not remember signing his name to the certificate of acknowledgment. Yost and Winkler were both officials of the bank of which Muehlenpfordt was president and while they testified their signatures were not genuine, two handwriting experts who showed extensive qualifications testified that they had examined the admittedly genuine signatures of Yost and Winkler and compared them with the signatures appearing on this bond and that the signatures on the bond were genuine. Satisfactory reasons were given

for their conclusions and we have examined the several photostatic exhibits found in the record and considering these together with all the other evidence and the further fact that more than two years after the original bill was filed, these defendants filed their amended answers, in which they then, for the first time, made this contention, we are inclined to concur in the chancellor's finding on this issue and approve that portion of the decree which found that these defendants had executed this bond.

It is next insisted by counsel for Yost and Winkler that they are not liable for any loss occurring prior to July 1, 1932, the date of the bond which we have found they executed. The decree held them jointly and severally liable with the American Surety Company for all misappropriations made by Muehlenpfordt during the terms prior to the date of their bond. The law is that where a public official, at the end of his term, makes a report showing that he had on hand public funds for which he is bound to account and this report is accepted and approved by the proper authorities and the officer so reporting is re-elected or reappointed and executes a new bond, the principal and sureties on the last bond are estopped to say that the sum shown in the report to be in the hands of the officer at the time the report was approved, was not actually in his hands. *Otey v. Westerman,* 276 Ill. App. 395; *People v. Birket,* 342 Ill. 333; *Morley v. Town of Metamora,* 78 Ill. 394; *City of Chicago v. Gage,* 95 Ill. 593; *Roper v. Sangamon Lodge No. 6, I. O. O. F.,* 91 Ill. 518; *Cowden v. Trustees of Schools,* 235 Ill. 604.

*Morley v. Town of Metamora, supra,* was an action upon the official bond of a supervisor who was first elected in April, 1872 and was elected his own successor the following year. The sureties on the bond given the first year were not the same as on the bond given the second year and the question for determination was upon whom falls the liability for the default,

whether upon the sureties on the first or second bond and in affirming a judgment against the sureties upon the second bond the court said: ''It is not made to appear very clearly, that whatever default occurred took place in the first year the supervisor was in office; but, conceding that fact, we do not think it relieves the sureties on the bond upon which this action is brought, from liability. The supervisor was his own successor in office. He had made his annual report, in which he charged himself with having a certain amount of money in his hands. That report was approved, and we must presume it was true. When he was re-elected, it was in his hands as his own successor. These facts appeared upon the public records of the town. The new securities upon the official bond of the supervisor must be held to have had notice of what appeared on the public records. In contemplation of law, the money mentioned in his report was in the hands of the supervisor, and the undertaking of the sureties on his bond was that he should account for it. It was as much his duty to account for whatever funds were in his hands at the end of the first year, as it was to account for whatever should be received during the second year. The law made the sureties responsible for any default in that regard. There could be no action maintained against the sureties on the first bond at the expiration of that year, for there was no one who could make a demand for the money the supervisor reported as having in his hands, so as to establish a default.''

The evidence discloses that Muehlenpfordt made his annual report on June 30, 1932, in which he charged himself with the sum of $117,910.78 cash on hand. The rule announced in the *Morley* case requires Yost and Winkler to account as sureties for whatever sums were received by Muehlenpfordt after June 30, 1932, as treasurer, as well as for the sum of $117,910.78, which his report disclosed was in his hands on June 30,

1932. In other words, if Muehlenpfordt charged himself with having $117,910.78 on hand as treasurer on June 30, 1932, when in fact he did not have such sum, but a lesser sum on hand, then Yost and Winkler would be jointly and severally liable with the American Surety Company for whatever portion of that amount was in fact not on hand. Appellants Yost and Winkler are estopped to deny their principal's report and are therefore liable according to its terms, but it does not follow that because they are estopped to deny Muehlenpfordt's report, that they are jointly and severally liable with the American Surety Company for all misappropriations of their principal during the preceding terms. We think that Yost and Winkler's joint and several liability with the American Surety Company must be confined within the amount of $117,910.78, after allowing credit for whatever portion of said sum was actually in the hands of said treasurer on June 30, 1932. In this respect the decree was not correct and it should be modified and limited to the extent here indicated.

It is insisted by appellant American Surety Company that the statute of limitations had run on the bonds which it executed in 1912, 1914, 1916, 1918 and 1920 and that the chancellor erred in not so finding. This is a suit in equity for an accounting and this defense is technically one of laches as the statute of limitations does not strictly apply to equity cases. *Moneta v. Hoffman,* 249 Ill. 56; *Duncan v. Dazey,* 318 Ill. 500. However, as a general rule, equity follows the law and will adopt by analogy the same period of time fixed by the statute. *Thomas v. Chapin,* 274 Ill. 95; *Dixmoor Golf Club, Inc. v. Evans,* 325 Ill. 612; *Fyffe v. Fyffe,* 292 Ill. App. 539. This is especially true, where there are concurrent remedies at law and in equity. *Richardson v. Gregory,* 126 Ill. 166; *Wolkau v. Wolkau,* 202 Ill. App. 387. Counsel for appellees insist first that laches cannot be imputed to the trustees

of schools as the funds in their treasurer's hands were trust funds, and second, that the doctrine of laches cannot be invoked because their treasurer fraudulently concealed his embezzlement.

*Brown v. Trustees of Schools,* 224 Ill. 184, was an ejectment action brought by the trustees to recover possession of a part of a schoolhouse lot to which the trustees held legal title for the use of the school district. In sustaining the defense of the statute of limitations, the court held that to exempt a municipal corporation from the operation of such statutes it must appear that the use for which the property is held must be for the public at large and not merely for the inhabitants of a particular local district, that in that particular case the people of the State in general had no interest in common with the inhabitants of the school district, in the schoolhouse site or in the proceeds derived therefrom, and that the use and the right to the use were confined to the particular local district. In *Phillips v. Leininger,* 280 Ill. 132, the commissioners of highways of the town of Norwood Park sought to enjoin the defendants from obstructing an alleged highway across the grounds of the Chicago State Hospital. One of the defenses interposed was that the land in controversy was State property and that the State Board of Administration, as an agency of the State, had a right to close up the alleged highway. In holding otherwise the court quoted extensively from *Brown v. Trustees of Schools, supra,* and held that under the facts in that case the county of Cook was subject to the statute of limitations the same as an individual.

In the instant case the moneys protected by the treasurer's bond were not for the use of the public generally but for the use of the inhabitants of the particular school districts and the defense of laches will bar liability on the bonds given by the treasurer prior to 1922 unless the delay of the plaintiffs to assert their rights

is excused by ignorance or lack of knowledge of the facts due to the fraudulent concealment of their cause of action by their treasurer. The record discloses that the reports made by Muehlenpfordt to the trustees were false and untrue, contrary to the provisions of the statute which provided that his reports should disclose the true condition of his accounts. The statute, however, required the trustees to at least semi-annually examine the books, notes, mortgages, securities, papers, moneys and effects of the corporation, and the accounts and vouchers of the township treasurer, and to make such orders for their security, preservation, collection and correction of errors as may be necessary (Ill. Rev. Stat. 1939, ch. 122, sec. 38 [Jones Ill. Stats. Ann. 123.039]). The evidence is that Muehlenpfordt cleverly and fraudulently concealed the true conditions of his accounts and succeeded for years in escaping the discovery of his misappropriations. The trustees had no knowledge of these misappropriations and the law is that there can be no laches where there is no knowledge and delay will not bar relief where the injured party was ignorant of the fraud. *Moneta v. Hoffman, supra.* But want of knowledge caused by the failure to exercise diligence is no excuse for stale demands. *Simpson v. Manson,* 345 Ill. 543; *Neagle v. McMullen,* 334 Ill. 168. In our opinion the trustees failed to exercise the diligence imposed on them by express statutory command and their lack of knowledge of the true state of Muehlenpfordt's accounts as school treasurer is due to their failure to exercise the degree of diligence imposed on them by law and this failure on their part permitted their treasurer to succeed in making the concealment effective. We therefore hold that the defense of laches is sustained by the evidence in this record and there can be no recovery against the appellant Surety Company for Muehlenpfordt's misappropriations prior to September 5, 1923, this suit having been commenced on September 5, 1933.

Appellant American Surety Company next contends that Muehlenpfordt reported at the beginning of his last term of office on June 30, 1932, the amount of cash and securities which he had on hand, that this report was approved by the appellees and that therefore appellees and the appellants Yost and Winkler are estopped under the law relating to successive sureties from insisting that any part of the loss should be borne by the American Surety Company. Numerous authorities are cited to the effect that the principal and the surety on the principal's last bond are estopped from showing that the money reported by the principal as being on hand at the beginning of his last term was not actually on hand or that the shortage occurred during a preceding term. *Morley v. Town of Metamora, supra; City of Chicago v. Gage, supra; Cawley v. People for use of Woodford County,* 95 Ill. 249; *Cowden v. Trustees of Schools, supra; Otey v. Westerman, supra.* The rule creating an equitable estoppel applies between the principal and the sureties and prevents the principal and the surety on his bond from denying the principal's report of money on hand as against a surety on a prior bond. The money reported by the principal as being on hand at the beginning of a term, as against him and his sureties, is transferred in law to that term. It is true therefore that each successive surety is liable not only for the shortage actually occurring during the period for which his bond pertains but is liable also for any difference between the amount reported on hand when his bond was given and the amount turned over at the end of the term, no matter when the shortage occurred. The Trustees of Schools, however, owe no duty to the school treasurer or his sureties the performance of which can be the basis of any estoppel in favor of the sureties on a prior bond and against the Trustees of Schools. In this connection it is well to consider the conditions as they existed on July 1, 1932. On

that day the period of the American Surety Company's last bond expired. Muehlenpfordt's annual report and a new bond with Yost and Winkler as sureties was executed. The Trustees of Schools approved this report and the new bond but it is inconceivable that any reliance was placed by the Surety Company on the acts of the trustees of that date which could in any way have misled the American Surety Company and induced it to do anything or change its position as a result thereof. With the expiration of the American Surety Company's bond, its rights and obligations were fixed and determined and this surety neither changed its position in reliance on the treasurer's report nor did it do any act or assume any duty believing that the treasurer's report was true. It is an essential element of an equitable estoppel that the person asserting it shall have done or omitted some act or changed his position in relying upon the representation or conduct of persons sought to be estopped. *Chicagoland Agencies v. Palmer,* 364 Ill. 13; *DeProft v. Heydecker,* 297 Ill. 541. One who is not misled by another's conduct cannot claim estoppel. *McGee v. Vandeventer,* 326 Ill. 425. Estoppel applies only against one inducing belief in the existence of a state of facts on which another was induced to act. *People v. Federal Surety Co.,* 336 Ill. 472; *Wollenberger v. Hoover,* 346 Ill. 511. On July 1, 1932, the trustees had done no act which would have stopped them from holding the American Surety Company liable as of that date and they have done nothing since that time to alter this situation. Counsel insist that the case of *Otey v. Westerman, supra,* supports this contention but we do not think so. It appears in that case that the trustees of schools were made a party defendant and filed a cross-bill for relief, but the language of the opinion in that case expressly limits the estoppel to the school treasurer and his sureties. On page 405 of the opinion the court uses the following language:

"If this be a correct recital of the facts, it is, within the rule as stated, an estoppel in favor of the United States Fidelity and Guaranty Company, as against the surety on the $250,000.00 bond, approved July 8, 1931, as well as the surety on the $50,000.00 indemnifying obligation." This holding announces a rule of estoppel against one surety in favor of another surety. It does not hold that the Trustees of Schools can be held to be estopped from proceeding against the sureties under the facts disclosed by this record.

It is next insisted by the Surety Company that appellees are estopped from asserting any claim against it because of the certificates of examination furnished to appellant. These certificates were furnished by the Trustees of Schools to the American Surety Company at its own request. The American Surety Company claims that these certificates were falsely made because they certify that the trustees examined the treasurer's accounts and found them correct, when in fact the trustees had failed to make a thorough investigation of the treasurer's accounts as required by statute. There is no merit in this contention as the record discloses that the several bonds of the Surety Company, except one, were executed and approved before the current certificate was made by the Trustees of Schools. Appellants' last bond was dated June 16, 1930, while the Trustees' certificate was dated August 19, 1930 and received by appellant on August 21, 1930. A mid-term certificate was made which was received by appellant on October 5, 1931. In 1928 appellant's bond was dated May 7th, while the certificate bore no date as to when it was made or received by the appellant. In 1926 appellant's bond was dated May 25th, while the certificate bore no date but was received by appellant on August 1, 1926. In 1924 appellant's bond was dated May 29th, while the certificate bore no date but was received on July 1, 1924. In 1922 appellant's bond was dated May 22nd, while the certificate bore

no date but was received on December 7, 1922. In each case the audit was made by the Trustees after the date of the bond, except in 1928, when the audit was made on April 1st prior to the bond's execution on May 7th by appellant. The fact that the Surety Company executed the several bonds prior to receiving the Trustees' certificates indicated that it did not rely upon the statement made in these certificates in executing Muehlenpfordt's bonds as surety. There was no statement made to the appellant Surety Company by the Trustees upon which it would rely at the time it executed each current bond. The fact that these statements were subsequently made to appellant containing misrepresentations of fact fail to satisfy the requirement that the statement of fact must be made for the purpose of inducing action and reliance by the Surety Company. Furthermore, the duty of the Trustees of Schools to examine the school treasurer's accounts is for the benefit of the general public and is not for the benefit of the school treasurer and his prospective bondsmen. *Robbins v. Scarborough,* 181 Ill. App. 58.

It is next contended that the evidence does not show a shortage in the treasurer's accounts, and especially does not show any shortage prior to July 1, 1932. The record does not sustain this contention. A. P. Dailey, who succeeded Muehlenpfordt as treasurer, testified that he received $5,500 in notes, mortgages and securities when he became treasurer. The annual report of Muehlenpfordt made on June 30, 1932 shows a balance on hand of $117,910.78. The accountant testified that the last entries in Muehlenpfordt's accounts for each district prior to his death on April 22, 1933, disclosed a total balance of $29,936.58 in his hands as treasurer. Neither this balance nor any part thereof was turned over to Dailey as succeeding treasurer. A shortage was proved to exist in Muehlenpfordt's accounts. The matter of time when the shortage first occurred or when the various items constituting the

shortage arose relate particularly to the matter of the accounting before the master, when it will be necessary to make this proof. In our opinion a sufficient showing was made as to a shortage to justify the decree ordering an accounting not only against the surety on Muehlenpfordt's bond when the shortage was discovered but also against his prior sureties. The proof in this case justified the decree directing the master to take evidence and state the account. *Ligare v. Peacock,* 109 Ill. 94; *Rhodes v. Ashurt,* 176 Ill. 351.

Counsel for the American Surety Company finally insist that the chancellor erred in overruling their oral motion made at the time the case was called for trial to make available to it all the books and records relating to the accounts of the school treasurer, Muehlenpfordt. The motion was made on December 5, 1935, more than two years after this suit was instituted. Counsel for appellant insisted that counsel for appellees had the books and records in their custody and refused to permit counsel for appellant to examine them. Counsel for appellees denied that they refused to permit opposite counsel from examining these books and records but did refuse to furnish appellant with the audit of these books and records until appellant paid one-half the cost of the audit which had been made at the expense of the appellees. Many of the records were public documents of the county superintendent of schools and other public officials and some were the books and records of the school treasurer and school trustees. We do not believe appellant exercised due diligence in making this motion and therefore the case of *People v. Gerold,* 265 Ill. 448 is not in point. From the testimony of the attorneys in the case, it seems to us that appellant was more interested in procuring a copy of the audit made by appellees' accountants rather than the books and records. They had no right to demand this audit of appellees as it was appellees' evidence of the true condition of Muehlen-

pfordt's accounts as shown by his own books and records and the records of Will county. The evidence is that five accountants worked more than five months in examining the books and records of the treasurer, the records of the county treasurer and county superintendent of schools, the books of 11 school districts of which Muehlenpfordt was treasurer and examined between 25 and 30,000 school orders, vouchers, books and other instruments. If appellants' motion had been made in apt time and had it disclosed a refusal by appellees to permit this appellant to examine the books and records of the school treasurer, the court undoubtedly would have protected appellants' interests and if it had not, this appellant would them be in a position to complain.

The decree of the circuit court of Will county is modified in the respects intended in this opinion relating to the defense of laches and the joint and several liability of the appellants Yost and Winkler. In all other respects the decree of the trial court is affirmed.

*Decree modified and as modified affirmed.*